J. W. BEACH, *Appellant,* v. E. P. WILLIAMSON, *Appellee.*

Opinion Filed December 17, 1919.

Petition for rehearing denied January 26, 1920.

1.  The directors of an insolvent corporation occupy toward the
    creditors of the corporation a fiduciary relation in that the
    properties of the corporation constitute a fund for the pay-
    ment of the corporation's debts which fund the directors
    are charged with managing to the best interest of the
    creditors.

2.  The directors of an insolvent corporation who obtain a con-
    veyance to themselves of all the properties of the corporation
    upon a promise to pay the debts of the corporation by secret-
    ing information concerning their opinion as to value of the
    properties that they may gain profit for themselves, and in
    pursuance of this design urge upon the other stockholders

and creditors their agreement to the transfer of the properties, will be deemed to have committed a fraud upon the creditors of the corporation, entitling them to a cancellation of the deeds conveying the properties and to the declaration of a lien thereon for the payment of their debts.

An Appeal from the Circuit Court for Lake County; W. 'S. Bullock, Judge.

Decree affirmed.

*Blount & Blount & Carter,* for Appellant;

*Hocker & Martin,* for Appellee.

ELLIS, J.—In November, 1917, E. P. Williamson exhibited his bill in the Circuit Court for Lake County against Groveland Realty Company, The Florida Development Corporation, both Florida corporations, Henry L. Bressler as administrator of the estate of George N. Bressler, deceased; M. A. Bressler, A. M. Bressler, Neva Mae O'Neill and her husband, M. C. O'Neill, H. L. Bressler, J. W. Beach, Geo. T. Cann as Trustee for creditors of F. D. Finsley and D. B. Hull.

The allegations of the bill in substance were that in 1913 the complainant and George N. Bressler and J. W. Beach and others were stockholders of the Florida Development Corporation, which was organized for the purpose of dealing in lands and which held a large acreage of lands in Lake County; that the corporation was without funds to pay the proper demands upon it or to properly conduct its business, and owed large sums of money, about $38,256.00, which, according to Exhibit "E" attached to the bill, it owed to about forty persons, the complainant holding $24,667.47 of the debt; that the stockholders

unanimously agreed that the Florida Development Corporation should convey all its property, real and personal, to George N. Bressler, who agreed to assume and pay all of the debts and obligations of the corporation; that pursuant to that agreement a written contract was entered into between the corporation and George N. Bressler on the 1st day of May, 1913, whereby the corporation agreed to convey to George N. Bressler all its property, real and personal, and Bressler agreed to release all his claims and obligations against the corporation and to assume and pay all the liabilities outstanding against it. A clause in the agreement provided that it was mutually understood and agreed between the parties that the consideration for the conveyance to Bressler of all the corporation's property was the payment to Bressler of one dollar, the release of his claims against the corporation and that he would assume and pay all its liabilities and that he would carry out and fulfill all the "selling contracts" made by it. Bressler's claim amounted to $5,575.00; Williamson's claim amounted to $24,000.00 and $667.47.

The bill alleges that pursuant to the agreement a list of the liabilities and contracts of the corporation was delivered to Bressler, deeds were executed and delivered to him conveying all the property of the corporation. Copies of these deeds were attached to the bill and made parts of it as Exhibits B, C and D; that complainant was the president of the corporation at that time, but that he did not reside in Florida; that Bressler and J. W. Beach were directors of the corporation and the active men in charge of its business.

It is alleged that complainant is not informed whether Bressler had paid any of the other debts of the corporation and that the bill was filed in behalf of complainant

and all other creditors whose claims Bressler had assumed and agreed to pay.

It is alleged that this arrangement above recited was urged upon the complainant and the other stockholders by Bressler and Beach, who represented that it was for the best interests of all parties, and upon such representations complainant assented to the agreement. It is alleged that prior to the consummation of this arrangement Bressler and Beach privately entered into a contract dated the same day, May 1st, 1913, of which, however, the complainant was ignorant, in which it was recited that Bressler had acquired certain lands in Lake County from Tinsley and Hull; H. S. Budd and R. F. E. Cooke; E. E. Edge and T. E. O'Keefe, and all the lands of the Florida Development Corporation and all its assets, negotiable instruments and personal property, and by which it was agreed that Bressler should receive "net to him in cash, less all expenses, commissions, office force and necessary incidental expenses pertaining to the sale of said land contracts, real and personal property acquired (same not to include the liability of the Florida Development Corporation assumed by George N. Bressler, in the sum of thirty-three thousand two hundred· seven and 81/100 ($33,207.81) from the date of this agreement, the sum of one hundred thousand dollars ($100,000.00) from the sale of the lands held by him, by contracts, deed or otherwise, acquired from the Florida Development Corporation, Tinsley & Hull, Budd & Cooke and E. E. Edge as aforesaid, he will pay unto the said ·party· of the second part (Beach) 25% of the gross receipts received thereafter as aforesaid from the sale of said land at retail, less all expenses, commissions, office force and necessary incidental expenses pertaining to the sale of said land (same not to include the liability of the Florida Development Corpora-

tion assumed by George N. Bressler, in the sum of thirty-three thousand two hundred seven and 81/100 ($33,207.81) dollars.''

Another clause of this agreement provides that Bressler was in no event to be liable to Beach for any part of the ''25% hereinbefore referred to until'' Bressler had first received his one hundred thousand dollars ''as aforesaid from the sale of said lands.'' After which Beach ''shall be entitled to twenty-five per cent of all property, both personal and real, acquired as herein set forth after reasonable time expires from date.'' It was also agreed that if Tinsley & Hull, Budd & Cooke or T. E. O'Keefe should foreclose any of their mortgages on any of the lands and such lands should be lost to the parties on account of such foreclosure, then Bressler's one hundred thousand dollars to be received by him before Beach should come into his interest, should be reduced by five dollars per acre for all lands so lost to the parties by foreclosure. Provision was also made in the contract for any loss that Bressler might sustain on account of the contracts made by the Florida Development Corporation which he had assumed, affecting lands conveyed by the corporation, the title to which might fail. It was provided that if Bressler should sell his interests in the property before he received the $100,000.00 he should pay to Beach the sum of three thousand dollars as full payment of all his interest or claim under the contract. Beach agreed to use his influence and good will in the sale and colonization of the lands and was to receive a commission on all sales effected by him. The bill alleges that at the time this contract was made Beach was the manager and secretary of the Florida Development Corporation; that Beach at the time of filing the bill was suing for large amounts under the contract made with

Bressler involving the property conveyed by the corporation to the latter and such claims were adverse to the interests of the corporation's creditors mentioned in the list which was delivered to Bressler. It is asserted that under these circumstances Beach's claims are subordinate to those of the complainant and other creditors of the corporation, because he had full knowledge and information of all the circumstances under which the corporation's properties were conveyed to Bressler and himself urged the arrangement upon them. That after May 1st 1913, the corporation ceased to transact any business and Bressler took charge of all the "assets, lands and property formerly belonging to it and got all the benefit contemplated or agreed to under said arrangement;" that he has never paid the consideration for which the deeds were executed; that the corporation has practically gone out of business, having divested itself by said arrangement of all its assets and that what is left of its property in the hands of Bressler or held by his estate or heirs, he having died intestate, constitutes a trust fund for the payment of the corporation's creditors. That M. A. Bressler, H. L. Bressler, A. M. Bressler and Neva Mae Bressler are his heirs at law; Henry L. Bressler is administrator of George N. Bressler's estate; that the Groveland Realty Co. is a Florida corporation organized by the heirs at law of George N. Bressler for the purpose of taking over his estate, including the property obtained from the Florida Development Corporation, and that all the above mentioned parties had full knowledge of all the matters and circumstances alleged in the bill. That when Bressler acquired the property of the Florida Development Corporation he executed and delivered to the complainant four promissory notes aggregating twenty-four thousand ($24,000.00) dollars, which notes are wholly unpaid ex-

cept the amount endorsed thereon, which amount is about thirteen hundred and fifty-four dollars. These notes were all due at the time the bill was filed and had been presented to the administrator of Bressler's estate for payment, but had not been paid and the administrator had filed a suggestion of insolvency. That Geo. T. Cann, as trustee for the creditors of F. D. Finsley and D. B. Hull, claims to have some interest in the property described in the conveyance to Bressler from the Florida Development Corporation, but it is asserted that his claim is subordinate to that of the corporation's creditors.

The relief prayed for is in the alternative. An accounting is asked for against the representatives of Bressler's estate of the amount due by him to the creditors of the Florida Development Corporation whose debts he assumed and agreed to pay, that such representatives be required to pay the amount found to be due and that all the property conveyed to Bressler by the corporation be deemed and held to be a trust fund for the payment of the debts of the corporation, or that the complainant and those who are mentioned in the list of the corporation's creditors which was delivered to Bressler be decreed to have a lien upon the property conveyed by the corporation to Bressler as aforesaid; or that the deeds executed by the corporation to Bressler be set aside and cancelled for failure of consideration and that such of the property therein described as may remain unadministered or that was not sold by Bressler, shall be declared to revert to the Florida Development Corporation and be held and administered by the court and the proceeds thereof applied to the payment of the debts of the Florida Development Corporation and what may remain be turned over to the proper officers of the corporation; that a receiver be appointed to take charge of all the property described

in the deeds from the Florida Development Corporation which has not been disposed of and that he be authorized to sell any part of such property. There was also a prayer for general relief.

Upon application by complainant the court, on January 15, 1918, appointed a receiver, H. C. Duncan, to take charge of the assets as prayed for in the bill. A bond was given by him in the sum required by the order and was duly approved by the clerk. It appears that H. C. Duncan was the attorney for all the defendants who bear the name of Bressler and for the Groveland Realty Company and the defendant McNeill, on the 28th day of November, 1917.

From the order appointing the receiver the defendant J. W. Beach appealed on February 15, 1918. The errors assigned are: First, entering the order and decree dated January 15, 1918; second, appointing H. C. Duncan receiver and authorizing him to take charge of the assets as prayed for in the bill.

It is argued by appellant that the relief asked in the third alternative should not be granted because failure to pay the agreed price for a tract of land or failure to redeem a promise which constituted the consideration for a conveyance furnishes no ground for the cancellation of the conveyance. This doctrine, thus generally stated, we think is sound, and this court has in other cases, as cited by counsel for appellant, approved it.

In the case of Harrington v. Rutherford and Keibel, 38 Fla. 321, 21 South. Rep. 283, this court, speaking through Mr. Chief Justice Mabry, said: "The authorities establish the rule that ordinarily a promise to do something in the future, though made by one party as a representative to induce another to enter into a contract, will not amount to a fraud in a legal sense, though the promise subse-

quently and without excuse be broken and unfulfilled.''
See also Godwin, Admx. v. Phifer et al., 51 Fla. 441, 41
South. Rep. 597.

In the transaction disclosed by the bill, however, there
was something more than a bare promise to pay a debt,
the relations of the parties were a little closer than
strangers trading at arms length; the relation of the par-
ties Bressler and Beach to the property of the corpora-
tion was a fiduciary one considered from the standpoint
of the creditors of the corporation. As officers of the
corporation it was their duty to manage the property to
the best interests of the creditors of the corporation, to
the end that their just claims and demands be paid in full.

Bressler and Beach were not only stockholders, but
were officers of the corporation in management of its
business in the direction of its affairs, they knew pre-
sumably its obligations, the value of its assets and the
condition of its properties.

The complainant was both officer and creditor to the
corporation. He was by far the largest creditor of them
all. He lived out of the State, leaving the management
of the corporation's affairs to Bressler and Beach, trusted
to their judgment, believed in their representations, knew
little of the true conditions and was guided by their state-
ments to the agreement by which they acquired all the
properties of the corporation to be divided between them
according to the terms of an agreement which they had
privately made between themselves, but did not reveal to
their association or to the creditors of the corporation in
whose interest they pretended to act and in whose inter-
ests they were in law required to act to the end that their
just debts and demands be paid and satisfied. Bressler
and Beach as directors of the corporation bore somewhat
the relation to it of trustees and while occupying such

fiduciary relation they were precluded from receiving any personal advantage without the fullest disclosure to and assent of all concerned. See 7 R. C. L. 458; Bosworth, Receiver, v. Allen et al., 168 N. Y. 157, 61 N. E. Rep. 163, 55 L. R. A. 751.

When one accepts the position of director of a corporation he contracts to give diligent attention to its concerns and to be faithful and honest in the discharge of the duties which the position imposes. He is not supposed to be infallible and does not stipulate against error, but he will not be permitted to speculate with corporate funds or property to his personal gain nor by suppressing information concerning the value of corporate properties be permitted to acquire them as purchaser at a small price to the consequent injury of the corporation or its creditors. See note 55 L. R. A. 751.

A very general doctrine of the American courts is: that the properties of a corporation are to be deemed a trust fund for the payment of the debts of the corporation, so that the creditors have a lien upon it or right of priority out of it in preference to any shareholder of the corporation. See 10 Cyc. 653; Crandall v. Lincoln, 52 Conn. 73; Beck v. Henderson, 76 Ga. 360; Union Mutual Life Ins. Co. v. Frear Stone Mfg. Co., 97 Ill. 537; Spear v. Grant, 16 Mass. 9; N. Y. City Nat. Trust Co. v. Miller, 33 N. J. Eq. 155; Tinkham v. Borst, 31 Barb. (N. Y.) 407; Marshall Foundry Co. v. Killian, 99 N. C. 501, 6 S. E. Rep. 680; Morgan Co. v. Allen, 103 U. S. 498, 26 L. Ed. 498; Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731.

While the statement that the directors of a corporation are trustees for its creditors may be technically inexact, it is at least correct in the sense that they are bound to exercise diligence and good faith in dealing with the properties of the corporation to the end that the creditors'

interests may be protected. Especially is this true in the case of an insolvent corporation. See 4 Fletcher's Cyclopedia Corporations, Secs. 2261-2271; Wheeler v. Matthews, 70 Fla. 317, 70 South. Rep. 416.

In the case of Sanger v. Upton, 91 U. S. 56, text 60, 23 L. Ed. 220, the Supreme Court of the United States, through Mr. Justice Swayne, said: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. When debts are incurred a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands until such demands are satisfied. The creditors have a lien upon it in equity. If divested they may follow it as far as it can be traced and subject it to the payment of their claims except as against holders who have taken it bona fide for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation for their security." As regards creditors, there is no distinction between money due for shares of stock in a corporation and any other assets which may form a part of the property and effects of the corporation.

No argument is necessary to apply these principles to the case at bar. Bressler and Beach as directors of the corporation represented to the President and other stockholders that the corporation had no funds with which to conduct its business or to pay its obligations, that it was to all intents and purposes insolvent, and induced the president and stockholders to agree to the proposition which meant the sacrifice of the corporation's assets that the creditors might be paid. This was the one and only purpose of the transaction, which purpose was perfectly consistent with the interests of creditors and met the requirements of law and equity, but Bressler and Beach sought profit out of the transaction. Their knowledge of

the value of the properties seemed to promise large returns. The information as to the value of the properties they kept to themselves when conscience required them to disclose it not only to the remaining stockholders but to the creditors in whose interests they pretended to act. The contract shows that each placed a higher value upon the properties than the amount of the corporation's debts. The suppression of this information as to the value of the properties, and the purpose entertained by them to speculate upon it to their own advantage, was in our judgment a breach of good faith which in their fiduciary capacities they owed to the stockholders and creditors of the corporation. But they not only withheld the truth; it seems that they purposely misrepresented the facts and deceived by such misrepresentations those in whose interests they were required by equity and good conscience to act. This fraud constitutes the basis of equity jurisdiction in this case. It is difficult to perceive how equity can be expected to permit these men to pocket great profits upon the property so acquired at the expense of the creditors whose fund it is and at the expense of their own obligations of honor to deal fairly and justly by the creditors of the corporation which they represented in a fiduciary capacity.

The complainant was entitled to the relief prayed for to cancel the deeds and declare a lien upon the corporation's lands for the payment of its debts.

The appointment of the receiver we think was within the discretion of the court under the case made. The selection of Mr. H. C. Duncan, who was attorney of record for the Bresslers, was not in accordance with the rule announced in the case of Lehman et al. v. Trust Co. of America, 57 Fla. 473, 49 South. Rep. 502, in that Mr. Duncan's relations to the Bresslers as their attorney left

him not altogether a disinterested party. However, we are informed that Mr. Duncan has resigned and another appointed by the court in his place. It would be useless, therefore, to direct the chancellor to amend his order by the substitution of some other person for the one first appointed as receiver.

The order or decree is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.

## On Petition for Rehearing.

PER CURIAM.—In the petition for rehearing it is asserted by counsel that the court in its opinion made a statement of fact that is not sustained by the allegations of the bill.

This rather stringent review is not supported by the record.

In the first place, the record shows that the bill had been one file for more than three months and a half before the order appointing a receiver was made. That a notice was given by complainant's counsel to the parties defendant or their counsel by letter posted on November 28, 1917, two months after the bill was filed, of the intention to apply to the chancellor for the appointment of a receiver.

So far as the record discloses there was no demurrer to the bill, no answer interposed, nor is there evidence in the record that a *pro confesso* order was taken against the defendants, but the court appointed a receiver.

In making this order the court below considered that the bill contained equity. Now the petitioner through his counsel appealed from the order appointing a receiver

and avers in his petition for rehearing that there is no allegation in the bill which warrants this court in finding from this record the existence of the facts which this court in its opinion holds constitutes the basis of equity jurisdiction.

We announced in the opinion a proposition with which counsel seem to have no quarrel. It is one which appears to us to be perfectly consonant with the principles of right dealing between man and man, and that is, "where one accepts the position of director of a corporation he contracts to give diligent attention to its concerns and to be faithful and honest in the discharge of the duties which the position imposes." Now what does the record disclose? Williamson, the complainant, although president of the Florida Development Company, did not reside in Florida, but Bressler and Beach "were directors and the active men in charge of the business and operations" of the corporation.

The chancellor was also mindful of the allegation that Williamson was not as well posted about the affairs (business and operation) of the corporation as Bressler and Beach, the active men in charge. The bill definitely alleges that Bressler and Beach *urged* the complainant to enter into the agreement with Bressler, and that they represented to your orator and the other stockholders of said corporation" that it was for "the best interests of all parties concerned," and that Williamson was "moved and induced by the representations." It is definitely alleged that at this very time the "corporation was then without sufficient funds with which to pay the proper demands made upon it, and without necessary funds to properly conduct its business, and owed large sums of money." The chancellor assumed, and we think correctly,

that Bressler and Beach knew that, because their dili-
gence as directors would require them to know it, and
that in this matter they were better posted than Wil-
liamson. Now if Bressler and Beach having superior in-
formation, more accurate knowledge of the corporation's
affairs, urged upon Williamson and the other stockhold-
ers that it was for the best interests of all parties con-
cerned, to transfer all the assets to Bressler upon his
promise to pay the debts, as the contract which was at-
tached to the bill and made a part of it definitely pro-
vides he would do, good faith and honesty required them
to withold no information concerning the value of the
corporation's assets and entertain no secret purpose to
speculate with those assets for their personal advantage.
They owed the utmost of good faith to the stockholders
and creditors of the corporation, which required them to
disclose every detail of any enterprise which they con-
templated entering upon involving the ocrporation's as-
sets conveyed to Bressler upon the representation by
him that the purpose was to obtain the payment of the
corporation's debts. If counsel differ from us upon this
proposition, we regret the fact.

Now what does the record disclose as to the conduct
of Bressler and Beach in this connection? They had
entered into an agreement as referred to in the bill, which
agreement had for its object the exploitation of the cor-
poration's assets, and other properties which were added
to them, for the personal profit and advantage of the two
directors of the corporation, which agreement so the
bill alleges the complainant had no knowledge of, and
did not learn of its existence until long subsequent there-
to. In the petition for rehearing counsel state: "It is of
course probable that both Beach and Bressler thought

that *they* could work out a profit from the lands by selling it by way of colonization as mentioned in the contract." As directors of the corporation, why was it not their duty to try and work out a profit to the corporation, instead of to themselves personally, by selling the lands in large or small tracts by colonization or any other means, especially as the corporation, so the bill alleges, was attempting to sell the lands "in large or small tracts?" If as directors they conceived a plan for making a profit from the lands, why should this plan be withheld by them from the stockholders and creditors in whose interest they, by reason of their positions were bound to act, instead of openly submitting it to them for endorsement or rejection? These directors of the corporation Beach and Bressler did not, according to the record, live up to this standard of good faith and fidelity to the interests of those whom the law required them to serve with diligence and utmost good faith.

A mere casual reading of the contract shows, we think, that Bressler and Beach contemplated making a *large* profit from the sale of the lands. The only difference between this court and counsel upon this point seems to be in the use of the adjective. We did not overlook the fact that the "contract between Beach and Bressler embraced lands in addition to those which Bressler derived from the Florida Development Corporation." The opinion specifically refers to the fact and mentions the names of the persons from whom Bressler acquired such lands. But we did not mention how many acres were so acquired nor what was paid for them; indeed neither the bill nor the contract gives that information; the contract merely recites that the lands so acquired lay *in* certain sections, and no mention is made of their cost. There

are, as we read the record, ample grounds for the con-
clusion reached by the chancellor that Bressler and Beach
had in mind the making of profit to themselves, in the
transaction, upon the corporation's assets. Among other
matters it is alleged that "Beach is now suing for large
amounts under the contract made between him and Bress-
ler with respect to the property formerly belonging to
the said" corporation. Yet under the terms of the con-
tract Beach was to receive only 25% of the property and
then only after Bressler had received in cash "net to him"
a sum of money almost three times larger than the debts
of the corporation. It would seem from this that Beach,
one of the directors and co-workers of Bressler, was as-
serting in the courts that his part of the profits was
a large amount. The chancellor concluded therefore in
the absence of any denial on the part of the defendants
that the profits contemplated and actually made were
quite large, with respect to the property formerly belong-
ing to the corporation. To hold that Bressler should be
protected in the possession of these profits, or that Beach
should appropriate the corporation's assets to the liqui-
dation of his own claims against his fellow director over
the persons whom it was their legal, equitable and moral
duty to protect first, is to give judicial sanction to a
breach of faith; to protect a fraud upon the sophistical
assertion that they had a right to buy the assets of the
corporation. Officers of an insolvent corporation may
have the right to buy the assets and properties of the
corporation, but only after they have made a clean state-
ment, to those most concerned, as to their beliefs con-
cerning the value of the properties and possibilities for
liquidation to the end that the transaction may be kept
free from the possibilities of double dealing. Notwith-

standing the views of the able counsel for appellant we have after reading the bill and exhibits again as requested, been confirmed in the opinion as rendered heretofore, so the petition is denied.

All concur.