ALBERTA W. LASSETER, AS EXECUTRIX OF THE WILL OF B. G. LASSETER, DECEASED, *Appellant*, v. EDGAR C. LONG, *Appellee*.

Opinion Filed April 25, 1923.

Petition for Rehearing denied June 12, 1923.

1. The decree of a Chancellor resting upon his interpretation of the evidence and the conclusions drawn therefrom will not be disturbed unless clearly shown to be erroneous.

2. A borrower who pledges as collateral security the property of another with the latter's consent, is, upon payment of the debt entitled to be subrogated to the creditor's right to subject the securities to the payment of the debt if it has not been paid where the borrower obtains the money for the benefit of the owner of the securities.

3. When the person for whose benefit a sum of money is obtained upon the promissory note of a third person with the former's stock pledged as security sells the securities to the creditor the transaction may be treated by the pledgor as a conversion of the stock and he may bring his action for the damages resulting therefrom.

An Appeal from the Circuit Court of Duval County; George Couper Gibbs, Judge.

Decree affirmed.

*Herbert L. Anderson,* for Appellant;

*Marks, Marks & Holt, E. J. L'Engle* and *W. F. Rogers,* for Appellee.

ELLIS, J.—This is a suit in equity to redeem three hundred shares of stock of the Whiddon Cash Stores, a Florida corporation, alleged to have been pledged as collateral security by B. G. Lasseter on April 25th, 1915, with Edgar C. Long to secure a promissory note executed on that date by Lasseter in favor of Long for the sum of thirty thousand dollars payable on demand which note bore interest at the rate of seven per cent. per annum payable quarter annually.

The bill alleges that on April 25th, 1915, B. G. Lasseter procured a loan of thirty thousand dollars from E. C. Long, to whom Lasseter gave his promissory note for that

amount with interest to accrue and caused to be issued by the Whiddon Cash Stores, in the name of E. C. Long, three hundred shares of its capital stock as collateral security for the payment of the promissory note. That Lasseter was the "owner or holder" of three hundred shares of the capital stock of the Whiddon Cash Stores and procuring the loan from Long caused the stock to be issued in the latter's name.

B. G. Lasseter died in May, 1918, and his executrix commenced this suit in March, 1919, after making a tender to Mr. Long of the amount due on the note and by way of keeping such tender good deposited the sum of $32,787.94 in the registry of the court with the clerk. It is alleged that the defendant had recently collected six thousand dollars in dividends upon the stock which he should return to the complainant.

The prayer is that the complainant be allowed to redeem the pledge, that a valid transfer of the stock be made to the complainant, that the defendant pay over to complainant the six thousand dollars, or such sums as may appear to have been paid to the defendant in dividends on the stock, and that he be enjoined from receiving any further dividends upon the stock and for general relief.

The defendant answered that the transaction was not a pledge of the stock to secure a loan, but an outright purchase of the stock by him and that the note was executed by Lasseter as a guaranty that the stock would pay seven per cent. dividend.

The defendant averred that the transaction occurred in the following way: In 1914 the United Grocery Company was a corporation engaged in a wholesale grocery business. Lasseter was general manager and a director, defendant was also a director. In March, 1914, Whiddon's

Cash Stores, a corporation, was organized for the purpose of operating a chain of retail grocery stores in Jacksonville and elsewhere. These stores were to be an outlet and market for the merchandise of the wholesale corporation which was to be the owner of the stock of the Whiddon Cash Stores. Enough stock was issued to three persons to effect the organization and secure the charter. The Whiddon Cash Stores corporation was not to pay any dividends but all profits earned would accrue to the main corporation, the wholesale concern. Lasseter was also manager of the Whiddon Cash Stores and directed and managed its affairs.

In the early part of the year 1915, the United Grocery Company became involved in financial difficulties. Its credit had become impaired and it was seriously embarrassed. In this situation Lasseter, in order to raise a large sum of money for the corporation, persuaded Long to buy three hundred shares of stock in the Whiddon Cash Stores at one hundred dollars per share, which stock was then standing in the name of Lasseter and the United Grocery Company, two hundred shares in Lasseter's name and one hundred shares in the name of the company. He persuaded Long to purchase the stock by guaranteeing that the stock would pay seven per cent. dividend and to make that guaranty good executed his note for thirty thousand dollars payable on demand with seven per cent. interest per annum in Long's favor. That Long treated the stock as his own and he was regarded by the corporation as a stockholder. He attended meetings of the stockholders and voted the stock as his own. That the three hundred shares of stock gave him the control of the business of the corporation and he directed and controlled it as a majority stockholder. Dividends were payable to him and he was at all times held out as the sole owner of the stock,

with Lasseter's knowledge. The Whiddon Stores advanced to the defendant from time to time sums of money equivalent to seven per cent. dividend upon the stock, these sums were charged to Lasseter on the books of the corporation and when a dividend check was issued to Long he transferred it to Lasseter with which the items advanced were paid.

A great deal of testimony was taken, the investigation covering many collateral matters and incidents all of which were supposed to throw some light upon the true character of the transaction. The Chancellor, after considering the testimony and sustaining or overruling about three hundred or more objections to the evidence offered, decreed that the equities were with the defendant, dismissed the bill of complaint and ordered that the costs incurred by each party be paid by him or her so incurring it.

A petition for a rehearing was denied, but the decree was amended by denying a few more motions that had been overlooked and ordering the cancellation of the note for thirty thousand dollars.

The complainant appealed from both decrees which were rendered respectively June 16th and August 17th, 1921.

The issue presented by the pleadings is, was the transaction of April 25th, 1915, between B. G. Lasseter and E. C. Long a loan or a purchase. The complainant's prayer for relief rests upon the assertion that her testator borrowed from the defendant the sum of money alleged and procured the issuing of him of three hundred shares of stock in the Whiddon Cash Stores as collateral security. The defendant's defense rests upon the assertion that there was no loan, but an outright purchase of the stock, under

the personal guaranty of Mr. Lasseter that it would pay seven per cent. dividend.

A discussion of the evidence in every detail, considering the relative importance of one incident or another to the controlling question would be an endless task and one without useful results. Many incidents upon which the defendant relies as evidencing the nature of the transaction are entirely consistent with the theory of the complainant's case and not inconsistent with law, although perfectly consistent with the defendant's theory of ownership of the stock in the Whiddon Stores by Mr. Long.

The issuing of the stock in Mr. Long's name while evidence of his ownership is not conclusive, nor inconsistent with the idea that he held it merely as collateral. His activities in connection with the stock, voting it at meetings of stockholders, asserting the rights of a stockholder, receiving dividends and directing the business of the corporation cannot be said to be conclusive of his ownership, although he would probably have done those very things if he had been the absolute owner of the stock. The receipt by him from the corporation periodically of sums of money corresponding in amount to seven per cent. dividend upon his stock in anticipation of declared dividends, or formal action of the Board of Directors and the charging of these items to Mr. Lasseter and the subsequent repayment by Mr. Long of these items with the dividend check is more difficult to reconcile with his assertion of ownership.

The transactions were more in harmony with the spirit of an uneasy creditor overlooking no opportunity to collect his interest than that of a bona fide majority stockholder of a successful business enterprise conducting its affairs in good faith toward its minority stockholders and its creditors. If this was part of the defendant's business

management and control of the Whiddon Stores as major-
ity stockholder and guiding spirit he seemed to introduce
a standard of fair dealing to which the creditors of the
corporation and the minority stockholders would probably
have yielded a reluctant assent, if any at all, if they knew
about it.

The complainant's testator, B. G. Lasseter, and the de-
fendant were stockholders and directors of the United
Grocery Company, the former being the general manager
and in charge of its policy and operations and finances.
He was a large stockholder and an indorser on large
amounts of its obligations. He was at the time of the
transaction earnestly impressed with the necessity for
procuring funds to enable the corporation, of which de-
fendant was also a stockholder and director, to continue
business.

The Whiddon Cash Stores had been organized and the
corporation was owned by the United Grocery Company.
The latter was a wholesale grocery dealer, but it organized
a corporation under a different name to conduct the busi-
ness of retail grocers in the same territory in which it sold
groceries to other retail grocers, and retained the owner-
ship of this subsidiary business. The United Grocery Com-
pany thus became an outlet and market for its own goods
and merchandise, but under another name, to whom it
supplied goods for the retail trade while at the same time
selling, as a wholesale dealer, to other retail grocers.

The two businesses were so closely identified in interest
that one manager, B. G. Lasseter, directed the destinies
of both. The circumstance was of course known to the
defendant, who as stockholder of the United Grocery Com-
pany was interested in the business of the Whiddon Stores

in proportion to the amount of his stock holdings in the parent organization.

In this situation, according to the bill of complaint, B. G. Lasseter applied to the defendant for a loan of a large sum of money to be used in the interest of the parent corporation in whose affairs as stockholders and directors they were alike interested. Lasseter assumed the primary obligation which was evidenced by his promissory note secured by a pledge of stock in the Whiddon Cash Stores. The note definitely described the stock as certificates "Nos. 19 and 20 Capital Stock Whiddon's Cash Stores par value $30,000." These certificates are referred to in the note "as having been deposited with the said *bank* as collateral security for the payment of this note and any notes given in extension or renewal thereof and as security for the payment of any other liability or liabilities of the undersigned to said *bank,* whether now existing or hereafter arising."

The form used was probably a blank printed form of security note used by some bank, the parties carelessly neglecting to erase the word "bank" wherever it occurred and writing the word "payee" or the name of the payee in its place. The word "security" or "securities," as relating to the certificates of stock mentioned, occurs nine times in the note and several times language is used authorizing the sale of the "property" in the event of the failure to pay the debt evidenced by the note and the application of the proceeds of the sale to the obligation. There was of course no compulsion upon the defendant to make the loan nor to buy the stock, but, according to the bill, he did make the loan upon Lasseter's personal assumption of the debt and the securities pledged.

·· The promissory note constitutes the documentary evidence of the unmistakable intention of the parties at the time of the transaction. According to the bill the defendant made a loan for the benefit of a corporation in which he was stockholder and director, taking as security therefor the personal obligation of his fellow stockholder and director, and the stock in the Whiddon corporation accompanied by the written promise of the maker of the note that if the Whiddon securities should for ''any reason become unsatisfactory to said bank, or the holder hereof the undersigned (B. G. Lasseter) hereby agrees to make payment on account of this obligation satisfactory to the holder hereof, or to deliver to said bank, or the holder hereof, additional securities to the satisfaction of the holder of this obligation.''

The defendant's contention is, that when Lasseter applied for the money he offered to sell the stock in the Whiddon Stores, then belonging to the United Grocery Company, but standing upon the stock book of the Whiddon Stores in the name of Lasseter and the United Grocery Company. And that he was induced to make the purchase upon the promise of Lasseter that the stock would pay not less than seven per cent. dividend and that the Lasseter note was merely his personal guaranty of the dividend producing abilities of the Whiddon corporation. So that by this transaction the defendant according to his claim became the owner of a controlling or majority interest in a business owned by the corporation of which he was a director and in which he held stock but which was in embarrassed financial circumstances and much in need of the profit producing business of the subsidiary corporation. In addition to this he secured the personal obligation of his fellow director in the present corporation that the pur-

chase would continue indefinitely to be a safe one and a seven per cent. interest bearing investment.

Assuming that both Lasseter and the Whiddon corporation were solvent and prosperous and in view of the evidence in the case and the pleadings the assumption seems not to be unreasonable. The defendant, by this transaction according to his interpretation, aside from obtaining a valuable property which belonged to the parent corporation of which he was a director and which his obligations as such might have prompted him to save it for its creditors, secured the additional guaranty of his fellow director that the stock would continue to be good and a paying investment indefinitely.

His position as trustee, that is to say director, of the failing corporation thus enabling him to drive a most profitable bargain in which he secured the control of an established business enterprise belonging to the corporation which was in embarrassed circumstances, and a guaranty that the amount invested would not be subjected to loss even if his own management proved to be inefficient.

In support of this position much evidence was introduced by the defendant to show that the transaction was not what the written statement of the parties (the promissory note) solemnly declared it to be, but was in fact what the defendant declared it to be.

The Chancellor found the equities to be with the defendant.

We are not unmindful of the rule that the decree of the Chancellor will not be disturbed when resting upon his interpretation of the evidence unless it clearly appears to be erroneous.

The promissory note executed by Lasseter and accepted by Long is complete in form, unambiguous in language, purports to contain the agreement of the parties, valid in purpose, not charged to be fraudulent, nor to contain any misrepresentation of fact, made by competent parties, executed under the seal of the maker, accepted by the payee and witnessed.

It is of no importance that the stock pledged was not the absolute property of the maker of the note. It was the property of the corporation for whose benefit the money was obtained from the defendant. The allegation of the bill that Lasseter was the owner or holder of the stock is sufficiently sustained by evidence that the stock was permitted to be used in that transaction by its true owner, the United Grocery Company, for whose benefit the money was obtained. See Jones on Collateral Securities, Sec. 53; Springfield Co. v. Ely, 44 Fla. 319, 32 South. Rep. 892; 31 Cyc. 794.

It is argued by defendant that Lasseter at the time of the transaction being a director of the United Grocery Company, vice president and general manager and in the active and practically sole charge of its business, could not have purchased the stock in the Whiddon Stores without a breach of good faith and a misuse of his authority which would have rendered the transaction voidable. But it is the position of director of an insolvent corporation which imposes the obligation of fiduciary relation toward creditors and according to the answer Mr. Long was a director of the United Grocery Company as well as Mr. Lasseter. See Beach v. Williamson, 78 Fla. 611, 83 South. Rep. 860.

Lasseter's note to Long was the personal obligation of the former whether he considered it as such or not. Even

15—Vol. 85.

if Long knew that the money was to be used for the United
Grocery Company and was in fact so used the loan was
made upon consideration of the former's promise to pay
secured by the property of the United Grocery Company.
When the securities are recovered they will be held by him
in the capacity in which he held them when they were
deposited as collateral if in the meantime he did not ac-
quire the absolute ownership. The subsequent bankruptcy
of the United Grocery Company could not affect the nature
of the transaction.

It is contended by defendant however that subsequently
to the transaction, nearly two years, he purchased from
the Trustees in Bankruptcy of the United Grocery Com-
pany the stock in the Whiddon Cash Stores represented by
the certificates numbered 19 and 20 and that having ac-
quired the ownership of the property pledged the com-
plainant is not entitled to its possession.

This position is indisputable. The bill of sale executed
by the Trustees conveys the interest and title of the United
Grocery Company in and to those shares of stock to the
defendant, E. C. Long. Mr. Long's duties and obliga-
tions as a director being superseded by the bankruptcy
proceedings the purchase by him of the certificates of stock
from the Trustees in Bankruptcy was in no wise a breach
of good faith. By the bill of sale he became the owner of
the stock which had been pledged to secure the payment
of Lasseter's obligation made for the benefit of the United
Grocery Company.

But this transaction changed materially the relations
of the parties. As the loan was obtained for the benefit
of the United Grocery Company and the stock pledged
with its consent to secure the obligation which Mr. Las-
seter assumed, he would have been subrogated to Mr.

Long's right to sell the stock and reimburse himself from the proceeds of sale upon a default in the payment of the note.

This right of Lasseter, the United Grocery Company and Mr. Long have defeated. The latter now asserts title to the stock, denies complainant's right to possession of it upon the payment of the note and deprives her of her right to sell it and reimburse herself from the proceeds of sale. This amounts to a conversion by the pledgee for which an action may be maintained by the pledgor's legal representative but as she could not recover more than the amount of her testator's obligation, under the circumstances of this case, she cannot demand more than a cancellation of the note.

The decree of the Chancellor is therefore affirmed. It is further ordered that the money deposited by the complainant in the registry of the court with the clerk be returned to her.

TAYLOR, C. J., AND WHITFIELD AND BROWNE, JJ., concur.