THE GUARANTY TRUST & SAVINGS BANK, *Appellant,* v. UNITED STATES TRUST COMPANY; A. P. ANTHONY, AS RECEIVER; R. L. BLAGG; JAMES T. MCCARTHY; GILES J. PATTERSON; W. M. BOSTWICK, JR.; THE GUARANTY COMPANY AND J. C. LUNING, STATE TREASURER, *Appellees.*

En Banc.

Opinion Filed March 30, 1925.

1. When a corporation becomes insolvent in the sense that it is unable to pay its debts whlie its assets do not *ipso facto* be-

come a trust estate as to which the corporation or its officers become the trustees and the creditors the *cestuis que trustent* so that it may be administered as such by a court of equity such assets may, however, be administered in equity upon the theory that they belong to the creditors rather than to the corporation when the court takes possession of them on some recognized principle of equity jurisdiction.

2. The directors of an insolvent comporation occupy toward the creditors of the corporation a fiduciary relation in that the properties of the corporation constitute a fund for the payment of the corporation's debts. Such fund the directors are charged with managing to the best interests of the creditors.

3. Where a solvent corporation under an agreement with an insolvent one takes over all the assets of the latter and agrees to pay its creditors out of such assets and invest the surplus for the benefit of the stockholders of the insolvent corporation, the former becomes a trustee of such assets for the creditors of the insolvent corporation and is bound to apply such properties to the discharge and satisfaction of the debts of the insolvent corporation.

4. When a corporation has become insolvent and a receiver has been appointed it is not necessary to obtain permission from the court to bring an action against the receiver where the action is not an independent suit against the corporation or the receiver but an application by an interested party to the court which has taken jurisdiction over the matter to direct its own receiver to administer a trust fund which came into his hands as such.

An Appeal from the Circuit Court for Duval County; DeWitt T. Gray, Judge.

Order reversed.

*P. H. Odom* and *Joseph M. Glickstein,* for Appellants;

*Reynolds & Rogers, George M. Powell, E. J. L'Engle, George C. Bedell, W. M. Bostwick, Jr.,* and *Rivers Buford,* Attorney General, for Appellees.

ELLIS, J.—This case is here upon an appeal from an order sustaining several demurrers to a bill of complaint exhibited by the appellant against the above named appellees in the Circuit Court for Duval County.

The bill sought the cancellation of a certain agreement between the appellant and the United States Trust Company; the cancellation of a note for one hundred thousand dollars made by the appellant in favor of the United States Trust Company; the surrender of certain collateral security; the cancellation of a note and mortgage for thirty-four thousand five hundred dollars; the impounding of certain properties, assets of the appellant, held by the United States Trust Company; the disposition of the same by order of the court and the proceeds distributed as the court might direct; an accounting by the United States Trust Company and its receiver; injunction and other relief.

In 1921 the appellant, called the complainant, was a banking institution doing a banking and trust business. It suspended business because of a continued withdrawal of assets by depositors and the State Comptroller appointed a receiver, under the provisions of the Florida statute. That appointment was confirmed by an order of the Circuit Court in September, 1921.

An agreement was made between the complainant and the United States Trust Company, in July, 1922, acting through its representatives respectively, and approved by the stockholders of each and the Comptroller. A copy of the agreement is attached to the bill as Exhibit "A" and made part of the bill. It is alleged that the purpose of the

agreement was to effect a consolidation, or merger, of the United States Trust Company, with the complainant.

Certain of the complainant's assets were considered good, some doubtful and others worthless. Those which were considered good were listed at $572,000.00; those that were of doubtful value $35,000.00 and those that were worthless, $25,000.00. All of this exclusive of real estate, fixtures and furniture. The estimated value of the real estate being $134,000.00. The approximate liabilities of the complainant were $662,000.00. Exclusive of the assets considered to be worthless, $25,000.00, the complainant's assets exceeded its liabilities by $79,000.00.

It is alleged that in furtherance of the agreement R. L. Blagg, James T. McCarthy, Giles J. Patterson and W. M. Bostwick, Jr., "guaranteed, in writing, that the sum of approximately One Hundred Sixty-nine Thousand ($169,-000.00) Dollars would be realized from said doubtful assets" and the real estate. That to further assure the United States Trust Company that such sum would be realized from the real estate and doubtful assets of the complainant corporation they executed their promissory note to the United States Trust Company in the sum of $21,000.00. That company thereupon, by resolution, authorized W. M. Bostwick, Jr., "to pass said securities to the United States Trust Company, to be held by said company "for the purpose of liquidating the difference between the assets of The Guaranty Trust and Savings Bank, taken without recourse, and the liabilities" of that company which were assumed by the United States Trust Company, and for "reimbursing the above mentioned guarantors for any shortage in the assets of The Guaranty Trust and Savings Bank that might occur."

The remainder of the assets was to be used to purchase stock in the United States Trust Company for the use of the stockholders in complainant corporation.

It is alleged that the United States Trust Company received these assets, amounting to $169,000.00, pursuant to the resolution as well as the $25,000.00 of assets regarded as worthless, which became the property of the guarantors in consideration of the guaranty made by them.

After the agreement was made the complainant reopened for business and operated its bank for twenty days, during which time it executed to its depositors certificates of deposit amounting to $350,140.80, the Receiver having been discharged.

That pursuant to the agreement The Guaranty Company was formed with a capital stock of $150,000.00 and complainant became the owner of 1345 shares of stock of the par value of one hundred dollars each. These shares were acquired, so it is alleged, by the conveyance to The Guaranty Company of real estate valued at $134,500.00. And pursuant to the agreement, referred to as Exhibit "A", The Guaranty Company, in August, 1922, executed to the United States Trust Company "its demand note for One Hundred Thirty-four Thousand Five Hundred ($134,-500.00) Dollars," which was secured by the said 1345 shares of its capital stock which the complainant had acquired. It is alleged that the note was given in behalf of the complainant and was included in the sum of $169,-000.00, the payment of which had been guaranteed by Bostwick, Jr., and others. It was given to evidence the real assets of the complainant and in furtherance of the plan of consolidation between the two companies.

It is alleged that subsequently a note for one hundred thousand dollars, executed by the complainant and secured by the 1345 shares of Guaranty Company stock, and a mortgage of that company to the United States Trust Company for thirty-four thousand five hundred ($34,500.00) on the banking house of the complainant, were substituted

for the Guaranty Company's note for $134,500.00. It is alleged that the mortgage and note were deposited with J. C. Luning, as State Treasurer, but are now held by the United States Trust Company and accepted in lieu of the proceeds of a first mortgage to be placed upon the property transferred to The Guaranty Company and a second mortgage bond issued as provided by the contract.

It is also alleged that the United States Trust Company has failed and refused to pay all the certificates of deposit issued by the complainant, that about one hundred and sixty-seven thousand dollars of such certificates remain unpaid. That the fund so held by the United States Trust Company, which it acquired from the complainant, can be traced on the books of the defendant and definitely ascertained and applied towards the payment of the complainant's creditors. That the United States Trust Company has been placed in the hands of a receiver by the State Comptroller, under the provisions of the statute, and the appointment of such Receiver or agent has been confirmed by the court.

The demurrers by Mr. McCarthy, The United States Trust Company and Mr. Anthony, as Receiver, were sustained by an order of the court dated July 31, 1924. From that order the complainant took an appeal.

It is contended in behalf of the demurrants that the bill affirmatively shows that the assets of the complainant's Bank were transferred to the United States Trust Company free and clear from any lien or trust in favor of the complainant and shows no agreement or facts impressing such funds and assets with any trust or reserving lien thereon in favor of the complainant; that the complainant's prayer is at variance with the terms of the written agreement and the allegations of the bill establish no trust in favor of the complainant; that the creditors of the com-

plainant Bank are not made parties nor was any permission obtained from the court to bring the suit.

We think the court erred in sustaining the demurrers, because the bill alleges facts which constitute a cause for the exercise of the equitable powers by the court and no permission to bring the suit was necessary.

The main prayer of the bill is that the assets of the complainant corporation, held by the United States Trust Company and its Receiver, be impounded and disposed of as may be directed by the court.

To summarize the case made by the bill it is as follows: The complainant company is a corporation and was engaged in doing a banking and trust business and failed. It then transferred all its assets to the United States Trust Company upon the promise of that Company to pay the debts of the complainant. The defendant corporation received possession of such assets and failed to pay all the creditors of the complainant corporation. That such assets, constituting a fund for the payment of the creditors of the complainant corporation, or a part of such assets, sufficient to pay a great part of the complainant's debts if not all of them, can be definitely ascertained and set apart for administration by a court of equity.

The theory of the defense is that the agreement between the complainant and the United States Trust Company vested the complete ownership of the assets of the complainant in the Trust Company clear of any power of equity to follow such assets and subject them to the payment of the debts of the complainant.

The defense is unsound. When a corporation becomes insolvent, in the sense that it is unable to pay its debts, while its assets do not *ipso facto* become a trust estate as to which the corporation or its officers become the trustees and the creditors the *cestuis que trustant,* so that it may be administered as such by a court of equity, such assets

may be administered by a court of equity upon the theory that they belong to the creditors rather than to the corporation when the court of equity takes possession of them upon some recognized principle of equity jurisdiction. The directors, however, of an insolvent corporation occupy toward the creditors of the corporation a fiduciary relation in that the properties of the corporation constitute a fund for the payment of the corporation's debts which fund the directors are charged with managing to the best interests of the creditors. See Wheeler v. Matthews, 70 Fla. 317, 70 South. Rep. 416; Beach v. Williamson, 78 Fla. 611, 83 South. Rep. 860.

Now, when the agreement between the two corporations was made the facts were well known to both parties and the purpose of the agreement was clear upon its face and consistent with law and equity. That purpose was that the assets of the complainant corporation should be managed by the United States Trust Company for the best interests of the creditors of the complainant corporation, as the first consideration, and afterwards for the benefit of the stockholders of the complainant company.

So long as the defendant so applies such assets the purpose of the law is attained, but if it fails to do so the superior rights of the creditors of the complainant corporation to such assets will not be defeated by the transaction between the two parties to the agreement if the assets can be traced and the fund administered and the jurisdiction of the court invoked upon some recognized principle of equity jurisdiction.

The bill alleges that the agreement between Mr. Bostwick and Mr. McCarthy, which is attached to the bill as part of it and marked Exhibit "A", was ratified, confirmed and approved by both corporations and a majority of their stockholders respectively. By that agreement the United States Trust Company agreed to assume liability for and

pay and liquidate all liabilities of the Guaranty Trust and Savings Bank, other than capital liabilities, as shall be in existence as of the date of the delivery of such assets to the United States Trust Company. The allegations of the bill are that such assets so transferred to the defendant Trust Company aggregated in value a sum which was more than enough to pay all the creditors of the complainant corporation.

While it is not the purpose of this court to adopt here the so-called ''American doctrine'' as to the assets of an insolvent corporation becoming *ipso facto*, upon such insolvency, a trust fund for the benefit of the creditors of such corporation as *cestuis que* trustent, although as early as 1853 this court by a majority opinion announced the doctrine that when a corporation becomes insolvent the officers are trustees for creditors. See So. Life Ins. & Trust Co. v. Lanier, 5 Fla. 110.

And in Wheeler v. Matthews, *supra,* we said that equity would administer the assets of an insolvent corporation on the theory that in equity they belong to the creditors rather than to the corporation.

And in Beach v. Williamson, *supra,* the doctrine was announced that the directors of a solvent corporation are bound to exercise diligence and good faith in dealing with the properties of the corporation to the end that the creditors' interests may be protected and that it is especially true in the case of an insolvent corporation.

The contract between the complainant corporation and the United States Trust Company was made in the light of the above doctrine and must be construed in that light. The two corporations dealt with a fund concerning which the directors and other officers of the complainant corporation were charged with the duty of exercising diligence and good faith in its management to the end that the interests of the creditors of the corporation should be pro-

tected. The defendant, the United States Trust Company, received such assets for that purpose specifically. They constituted a fund set apart by the contract for a specific purpose and the defendant corporation therefore occupied toward it a fiduciary relation. It became a trust fund to be administered for a specific purpose. It is alleged that the corporation fails and refuses to so administer it. By the very contract entered into between the two corporations they made of the assets of the complainant corporation what, under the so-called ''American doctrine,'' the assets of an insolvent corporation become *ipso facto* upon the corporation's insolvency.

The wrongful diversion of a trust fund is a basis of equity jurisdiction.

In so far as the bill seeks the cancellation of a certain note and mortgage and an accounting by the defendant, United States Trust Company, to the complainant and that it be restored to the same position in all respects as to the assets transferred by it to the defendant that it was in at the time of the delivery of such assets to the United States Trust Company, there is no equity in it. But in so far as it may be regarded as a bill for the enforcement of a trust, the application of a trust fund to the purpose for which it was created, there is equity in it and the court may so direct the Receiver of the United States Trust Company to that end.

The complainant corporation has such an interest in the subject matter as to enable it to maintain its bill or petition to that end.

The bill is not an independent suit against the receiver of the defendant corporation but rather an application by an interested party to the court which has taken jurisdiction over the matter to administer the proper relief by appropriate directions to its receiver in relation to trust funds coming into his possession as such. See Jones v.

Stewart, (Tenn. Ch. App.), 615 S. W. Rep. 105; Porter v. Kingman, 126 Mass. 141; Smith on Receiverships, § 415.

The order sustaining the demurrers to the bill is reversed.

WEST, C. J., AND WHITFIELD, BROWNE, TERRELL AND STRUM, J. J., concur.