369 So.2d 644 (1979)
Charles "Bebe" REBOZO, Appellant,
v.
ROYAL INDEMNITY COMPANY and Baldwin Insurance Agency, Inc., Appellees.
No. 78-617.
District Court of Appeal of Florida, Third District.
April 3, 1979.
Rehearing Denied April 30, 1979.
Podhurst, Orseck & Parks and Joel D. Eaton, Miami, for appellant.
Fowler, White, Burnett, Hurley, Banick & Knight and Henry Burnett, Miami, Gerald M. Walsh & Associates, Fort Lauderdale, and Gilbert E. Tyson, for appellees.
Before SCHWARTZ, J., and CHARLES CARROLL (Ret.), and EZELL, BOYCE F., Jr. (Ret.), Associate Judges.
SCHWARTZ, Judge.
Rebozo appeals from a final judgment which dismissed his cross-claims against the appellees-cross-defendants, on the ground that he lacked standing to maintain the actions in his individual capacity. We reverse.
The long and tortuous history of this case began when a lady named Victoria Morejon recovered a personal injury judgment, which we reduced to $150,000 in Washwell, Inc. v. Morejon, 294 So.2d 30 (Fla. 3d DCA 1974), cert. denied, 310 So.2d 734 (Fla. 1975), against Washwell, Inc., a corporation of which Rebozo was an officer and director and the sole shareholder. Washwell was *645 covered by a liability policy issued by one of the present appellees, Royal Indemnity Co., which paid Mrs. Morejon its policy limits of $100,000. In order to recover the remaining $50,000, she then sued, among others, Rebozo, Royal, and the other present appellee, the Baldwin Insurance Agency, which was Washwell's and Rebozo's insurance broker.
As against Rebozo, who was sued as an individual, Mrs. Morejon contended that he was personally liable for the $50,000 as a trustee-last-director and sole distributee of the assets of Washwell, Inc., which had been dissolved after she had obtained the judgment against it. Her claim against Royal was based upon an alleged bad faith refusal to settle her claim within the $100,000 policy limits.[1] She alleged that Baldwin was liable by virtue of its negligence in not arranging, as it had allegedly undertaken to do, for adequate insurance for Washwell which would have protected it from a judgment in excess of the Royal policy limits.[2] Rebozo, in the individual capacity in which he had been sued, then brought cross-claims against Royal and Baldwin. The cross-claims asserted that, if Rebozo were required to pay the $50,000, both Royal and Baldwin were liable to reimburse him for that amount; the legal bases for the cross-claims were identical to those in Mrs. Morejon's action against those defendants, that is, bad faith as against Royal, and professional negligence as against Baldwin.
In the event, Rebozo was required to, and did personally pay the $50,000 to Mrs. Morejon. The trial court entered a summary judgment in that amount against him, as an individual, and this court affirmed that judgment in United States Fire Ins. Co. v. Morejon, 338 So.2d 223 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 426 (Fla. 1977), holding at 338 So.2d 224:
"We find no error in the trial court's entry of the judgment against Rebozo individually because after plaintiff's accident, but prior to the judgment against Rebozo, Rebozo liquidated Washwell and as sole stockholder, received all of the assets. Pursuant to Section 608.30, Florida Statutes (1975), Rebozo must maintain a sufficient amount of the dissolved corporation's assets in order to pay the claims of creditors. The properties of the corporation constitute a fund for the payment of the corporation's debts, and the surviving directors are charged with managing such fund for the interest of the creditors. See Guaranty Trust and Savings Bank v. United States Trust Company, 89 Fla. 324, 103 So. 620 (1925); Kyle v. Stewart, 360 F.2d 753 (5th Cir. 1966). The judgment against Rebozo is affirmed."
After Rebozo had duly satisfied this judgment, he attempted to proceed on the cross-claims against Royal and Baldwin, which had remained pending and dormant during the appellate proceedings involving the Morejon-Rebozo judgment. At the pre-trial conference, however, the trial judge dismissed both cross-claims, granting a previously filed motion to dismiss upon which the court had reserved ruling. The basis of the motion, and the ruling, was that Rebozo lacked standing to bring the cross-claims as an individual on the grounds that the original judgment had been entered only against Washwell, Inc.; that Rebozo had merely discharged a corporate obligation by paying the $50,000; and that a stockholder may not personally maintain an action to enforce purely corporate rights or redress corporate injuries.[3] We do not agree that the person *646 who individually paid the judgment has no individual standing to recover from the entities allegedly primarily responsible for its being entered. Accordingly, we reverse the order of dismissal.
Under the allegations of the cross-claim (and of Mrs. Morejon's original complaint)  which, at this stage, must be regarded as true  Washwell, Inc. would not have been liable for the $50,000 portion of the judgment which Rebozo was required to pay if Royal had exercised good faith by settling Mrs. Morejon's claim within the $100,000 policy limits, or if Baldwin had not negligently failed to provide insurance which would have covered the excess. Thus, Rebozo, in effect, satisfied an obligation which, under the law, was rightly owed by the cross-defendants. Since Rebozo obviously did not act as a mere "volunteer" in paying a judgment which had been entered of record against him, we hold that by doing so, he became equitably subrogated to the rights of both Mrs. Morejon[4] and the insured, Washwell, Inc.,[5] against Royal for its bad faith refusal to settle, and to the claim of Washwell against Baldwin for its "malpractice" in failing to arrange for excess coverage.[6] This court has recently recognized such a subrogation claim in a similar situation in American Home Assurance Co. v. City of Opa Locka, 368 So.2d 416 (Fla. 3d DCA 1979) (Case no. 77-2648, opinion filed March 6, 1979).[7] Our quotation in that decision from Ulery v. Asphalt Paving, Inc., 119 So.2d 432, 436 (Fla. 1st DCA 1960) is likewise appropriate here:
"Subrogation, a creation of equity, is founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another. Trueman Fertilizer Co. v. Allison, Fla., 81 So.2d 734. The right of subrogation has been sustained in almost every conceivable type of transaction where the party invoking it has been required to pay a debt for which another is primarily answerable, and which in equity and good conscience the other ought to pay."
See also America Fidelity & Casualty Co. v. United States Fidelity & Guaranty Co., 305 F.2d 633, 634-635 (5th Cir.1962), also cited in the Opa Locka case, where the court said:
"The rights arising under the doctrine of subrogation have been set out in a number of cases; .. . As stated in National Surety Corp. v. First National Bank, 1939, 278 Ky. 273, 128 S.W.2d 766, 767, 769, quoting from Vance v. Atherton, 1934, 252 Ky. 591, 67 S.W.2d 968, 970: `The doctrine of subrogation is pure equity, having foundation in principles of natural justice. It rests, not on contract, but on the natural principles of right and justice, when applied to the facts of the particular case, and includes every instance in which one who is not a volunteer pays the debt of another * * * It is applied only when necessary to bring about equitable adjustment of a claim founded on right and natural justice." [emphasis supplied]
Our conclusion that Rebozo, as an equitable subrogee, may individually pursue this action is in accordance also with the policy that actions may, and should, be "prosecuted in the name of the real party in interest ..." Fla.R.Civ.P. 1.210(a). See First National Bank of St. Augustine v. Perkins, 81 Fla. 341, 87 So. 912 (1921); Woodbury v. Tampa Waterworks Co., 57 Fla. 243, 49 So. 556, 560-561 (1909). To hold, as did the trial judge, that the man who has paid the judgment is not the party who is "really interested" in getting his *647 money back amounts to an exaltation of form over substance which we cannot approve.[8]
Reversed and remanded.
CHARLES CARROLL (Ret.), Associate Judge, dissents.
NOTES
[1] The ability of an injured claimant directly to maintain a bad faith action against the tortfeasor's insurance company was established in Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259 (Fla. 1971).
[2] In United States Fire Ins. Co. v. Morejon, 338 So.2d 223 (Fla. 3rd DCA 1976), cert. denied, 345 So.2d 426 (Fla. 1977), this court held that Rebozo's personal excess policy with United States Fire did not cover the judgment against Washwell, Inc.
[3] The appellees cite such cases as Fried v. Easton, 293 So.2d 87 (Fla. 3d DCA 1974), and Nelson v. Miller, 212 So.2d 66 (Fla. 3d DCA 1968). But see Dubbin v. Touche Ross & Co., 324 So.2d 128 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 1181 (Fla. 1976) (quoting exception that "[a] stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders ...")
[4] See n. 1, supra.
[5] Auto Mut. Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938).
[6] Caplan v. LaChance, 219 So.2d 89 (Fla. 3d DCA 1969), and authorities cited.
[7] Of course, this case was decided after the rendition of the judgment below.
[8] Our disposition makes it unnecessary to consider the other arguments advanced in support of Rebozo's contention that he has individual standing to sue, or his point that the trial court erroneously denied his alternative motion to amend the cross-claims so as to permit him to maintain the actions in his representative capacity as trustee for Washwell, Inc., or to make the corporation itself a party plaintiff.