FRANK H. LOGAN, ARLO BOX COMPANY, KATE B. HOWELL
AS ADMINISTRATRIX OF ESTATE OF E. L. HOWELL, DE-
CEASED, AND AS GUARDIAN OF EDWARD B. HOWELL, RUTH
HOWELL, ROBERT LEE HOWELL AND CHARLES JAMES
HOWELL, MINORS, *Appellants,* v. PAULINE P. ARNOLD IN
HER OWN RIGHT AND AS EXECUTRIX OF THE ''ESTATE'' OF
THOMAS IVERSON ARNOLD, DECEASED, *Appellee.*

Opinion Filed August 15, 1921.

A bill in chancery for the rescission of the sale of shares of stock
    in a corporation which alleges that the complainant, a
    widow, inherited the stock from her husband, who, at the
    time of his death, was the president and chief executive
    officer of the corporation, holding a majority of the stock;
    that within ten days after her husband's death the vice-
    president of the corporation, who held the remaining shares
    of stock save one share and who for years had been asso-
    ciated with complainant's husband in the management of the
    corporation's affairs and knew the extent of its business and
    the value of all its assets, began negotiations with the com-
    plainant for the purchase of her stock and represented the
    same to be less valuable than it was and the business and
    assets of the corporation to be less in volume and value
    than they were; that the complainant knew nothing of the
    value of her stock or the value of the corporation's assets,
    but relied upon the representations of the vice president who
    pretended to be solicitous of her welfare because of the obli-
    gations he owed to her deceased husband and the friendship
    he had for him, and by such representations induced her to
    rely upon his integrity and honesty of purpose, fidelity,
    character and good faith, and sold to him her stock at much
    less than its value in ignorance of its real value, states
    grounds for the equitable relief of rescission of the sale of
    stock by the complainant.

An Appeal from the Circuit Court for Marion County;
W. S. Bullock, Judge.

Order affirmed.

*H. M. Hampton*, for Appellants;

*Lunsford & Whitaker*, for Appellee.

ELLIS, J.—This is an appeal from an order overruling demurrers to a bill of complaint in which the complainant, Pauline P. Arnold, in her own right and as executrix of the "estate" of Thomas Iverson Arnold, deceased, sought the recission of the sale and transfer of 205 shares of the capital stock of the Arlo Box Company to Frank H. Logan and a cancellation of a certificate of five shares of the capital stock of the said corporation held by Logan and the cancellation of 150 shares of the capital stock of the corporation held by Logan and evidenced by certificates numbered from 14 to 23, both inclusive, and the cancellation of certain other certificates of stock in the corporation held by the said Logan and Kate B. Howell and the cancellation and annulment of a certain transaction between the said Logan and Kate B. Howell whereby the latter delivered to the former a certain promissory note executed by the complainant's testator for the sum of $6,750 in the purchase from her of 65 shares of the capital stock of the said corporation and for the re-issuing to the complainant of the shares of stock in the corporation which had been sold by her to the said Logan, and for an injunction restraining Logan from selling or transferring any of the shares of stock acquired by him from the complainant and enjoining the corporation from selling its mill, tramways, locomotives, rolling stock and its timber lands and for general relief.

. The bill is a very lengthy document comprising 26 pages of type written matter and 5 pages of exhibits.

The demurrer of Frank Logan contains 13 grounds; the first of which is that the bill is without equity as to Logan.

The demurrer of the Arlo Box Company attacks the bill upon several grounds, among which are that the bill is without equity as against the corporation; that it is not a proper party to the suit and that it appears from the allegations of the bill that the defendant is not interested in the controversy between complainant and Frank Logan upon which the litigation rests.

The demurrer of Kate Howell consists of 5 grounds among which are that she is not a proper party to the suit and the bill is without equity as against her and that the complainant has no right to compel a recission of the contract made between her and Frank Logan.

The Chancellor in the court below overruled the demurrers in a very clear and forceful opinion which was reduced to writing and incorporated in the record. As to the demurrer interposed by Frank Logan, the Chancellor held that the allegations of the bill show that while no fiduciary relation existed between the complainant and the defendant Logan, yet the circumstances surrounding the transaction were of such character that the complainant was impelled, induced or persuaded to part with her stock at the price and upon the terms alleged in the bill and that the circumstances were of such character as either to necessarily imply the relation of trust and confidence between the complainant and the defendant Logan or showed that the complainant expressly reposed trust and confidence in the defendant at his expressed or implied solicitation and which he violated to his own material profit.

As to the demurrer of Kate Howell the Chancellor held that she was a proper if not necessary party because the

transaction between her and the defendant Logan involved the transfer of a note made by the complainant's testator and the surrender of stock which he had deposited as collateral for the payment of such note and constituted a part of the transaction between the complainant and the defendant Logan which the former sought by her bill to have rescinded.

As to the demurrer of the Arlo Box Company the Chancellor held that it was a proper party in as much as the relief sought involved the issuing by it of new certificates of stock and the cancellation of old ones.

It is unnecessary in this opinion to set out the bill of complaint in full or to quote from it at any considerable length, but we will undertake to state in substance the salient features of the transaction as disclosed by the bill which being admitted by the demurrer constitutes the grounds for equitable relief. In the first place we fully concur in the views expressed by the learned Chancellor in the opinion filed by him when he entered the order overruling the demurrers and although we do not expect to be able to present the case in a better light than that in which the Chancellor stated it, we may be able to add something of substance to the strength of his views. From the allegations of the bill the following were the circumstances out of which grew the transaction of which the complainant complained. The complainant is the widow of Thomas Iverson Arnold, who died on the 26th of January, 1920, leaving a will appointing the complainant his executrix and naming her as sole legatee of his estate. Prior to his death Arnold for many years had been the president and chief executive officer of the Arlo Box Company, a corporation in which he held a majority of the stock. One share of the stock being held by Charles R. Murphy and the

remaining shares amounting to about 176 stood in the name of the defendant, Frank H. Logan. These three persons therefore at the time of Arnold's death were the owners of all the outstanding stock of the Arlo Box Company. That for two years prior to the death of Arnold, the defendant Logan had been associated with Arnold in the management of the business of the corporation and at the time of Arnold's death was the vice-president of the corporation and thoroughly familiar and conversant with its affairs, the nature, character and value of its assets. That Logan was a man who's peculiar qualification and experience as auditor and accountant attracted Mr. Arnold and induced him to associate the defendant Logan with him in the business of the corporation and that Logan was especially qualified and possessed of knowledge and ability to determine the true value of the assets of the corporation and of the profit of the business conducted by it.

That the corporation had for 20 years conducted a successful and profitable business and that during the last years next prior to Arnold's death was rapidly increasing in volume. That the complainant had no knowledge of the extent of the business or its assets, was wholly inexperienced in business matters and that by reason of the fact that the business relations existing between her husband and the defendant Logan for two years or more prior to her husband's death were of a close and confidential character in which her husband relied with great confidence upon the ability of the defendant and his integrity, she, upon her husband's death relied upon the integrity, fidelity, character, good faith and ability of the said defendant in all matters pertaining to her holdings in the Arlo Box Company represented by the shares of stock owned by her husband at his death to which she succeeded under the terms of his will. That upon the death of Arnold the de-

fendant Logan assumed toward the complainant somewhat
the position of guide, philosopher and friend, transacted
many matters for her pertaining to the probate of the will
and the appraisement of the estate, the selection of the
appraisers and the furnishing to them of information upon
which to appraise the value of stock held by complainant's
testator in the Arlo Box Company. During all of this
time it is alleged that the defendant Logan pretended to
be acting for the complainant and have for her the greatest
solicitude and concern for her welfare because of the per-
sonal and business friendship which he had for her hus-
band and because of the gratitude which he held on ac-
count of the favors which her husband had shown him.

That the defendant Logan within ten days after the
death of complainant's testator began negotiations with
the complainant for the purchase of her husband's stock in
the corporation of which they were both stockholders and
practically the owners and that in these negotiations the
defendant imposed upon the complainant's ignorance as to
the number and value of the shares of capital stock owned
by her and as to the volume and profit of the corporations
business by representing the business to be less profitable
than it was and the assets of the corporation less valuable
than they were. There are allegations in the bill of sub-
sequent efforts on the part of the complainant to obtain in-
formation from the defendant that would be discovered by
an examination of the books and accounts of the corpora-
tion in the defendant's possession which are evidentiary
of bad faith and a purpose to deceive on the part of the
defendant.

We think that the complainant and the defendant in the
trade whereby the latter acquired the former's holdings in
the corporation were not dealing at arms length as strang-

ers, but on the other hand the defendant's relation to the complainant's testator during the latter's life time up to the moment of his death was nearer that of co-partner than as stranger, because the stock in the corporation was owned exclusively by the two men who together conducted its affairs and managed its business. They worked together in the interest of the corporation of which they were the sole owners and that when Mr. Arnold died leaving the complainant as sole devisee of his holdings in the corporation her relations with the defendant naturally became, in a business way so far as the corporation was concerned, the same as that of her husband toward whom we think the defendant owed the duty of disclosing all the information he possessed concerning the affairs of the corporation and his opinion as to the full value of its stock. See Beach v. Williamson, 78 Fla. 611, 83 South. Rep. 860.

Under the over burden of many words the relations between the complainant and the defendant appear as we have undertaken to state them and those relations required the exercise of good faith on the part of the defendant in all his dealings with the complainant as to the acquiring of her stock by him in the corporation of which he was the only officer and sole manager and director. The order of the Chancellor in overruling the demurrers was correct and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.