A. P. FORCUM, Receiver for Union Bond and Mortgage Company, *Appellant,* vs. F. W. SYMMES, JOSEPH WEINTRAUB, FRANK CLARK, JR., ROSS WILLIAMS, WALTER L. HARRIS, GEORGE H. CLOSE, E. M. SYMMES, GEORGE A. WALDECK AND E. G. SEWELL, *Appellees.*

143 So. 630.

Division A.

Opinion filed August 23, 1932.

D. H. *Morgan* and *Ira C. Haycock*, for Appellant;

*Frank E. Lowman, Johnson & Noll, Morcock & Weintraub* and *Frank Clark, Jr.*, for Appellees.

ELLIS, J.—The Union Bond and Mortgage Company, a Florida Corporation, was organized with the appellees as stockholders. They executed to the corporation their promissory notes in part payment for the stock, both common and preferred, for which they subscribed. In August, 1927, the corporation was heavily indebted to various persons and had failed to pay such indebtedness. In March, 1928, the Atlantic Insurance Company obtained a judgment against the Union Bond and Mortgage Company in the sum of approximately two thousand, nine hundred dollars, in an action instituted in October, 1927. After beginning its common law action it maintained a creditors bill against the Bond and Mortgage Company and obtained the appointment of a Receiver of all the "property and assets" of the corporation.

The Receiver's report showed that according to the books of the corporation there were debts due to the corporation on account of stock subscriptions and other bills and ac-

counts receivable amounting to approximately seventy-seven thousand dollars, but the Receiver had been unable to collect such debts and the persons whom he had notified of their obligations and demanded payment did not, or refused to respond, except in two or three instances, for comparatively insignificant amounts.

The notes of the defendants given to the corporation on account of stock subscriptions amounted approximately to forty thousand dollars. When the corporation became insolvent, which fact was known to its officers and stockholders, but before the Atlantic Insurance Company began its action at law against it, the directors in August, 1927, by resolution adopted by them directed the return to the appellees and others of their notes and mortgages and other securities held by the corporation in consideration of the return by them to the corporation of the certificates of stock held by them for which they had subscribed, paid for partly in money and the balance by their promissory notes. This action seems to have been taken, according to the clear meaning expressed in the bill of complaint in this cause, upon the ground that as the corporation had become insolvent because of a ''great slump in business'' and would not therefore be able to continue and produce the anticipated profits which the appellees wish to enjoy by their status as stockholders, it was proper and just for their obligations to the corporation to be cancelled.

In June, 1928, A. P. Forcum was appointed Receiver of the Union Bond and Mortgage Company in place of C. C. Norton, who resigned.

Forcum as Receiver exhibited his bill in July, 1928, against Frank Clark, Sr., and others, to annul the transaction of August, 1927, in which the defendants procured a return to them of their notes and other evidences of indebtedness as being in fraud of the creditors of the cor-

poration; for an accounting by them of their indebtedness to the corporation, and a money judgment against them upon the coming in of the account and for general relief.

There were general demurrers and so-called special demurrers interposed to the bill, which were sustained; the bill was amended and again demurrers to it sustained, and finally on April 29, 1929, the complainant exhibited his second amended bill of complaint. Several defendants named in the original bill were omitted, six in number because they were non-residents or dead. Demurrer to that bill was also sustained and the bill dismissed by order dated January 21, 1930.

Four months later the complainant appealed, making the same returnable two months and twenty days later.

The delay both in taking the appeal and fixing the date of its return, while within the law may in the absence of explanation be evidence of procrastination not inconsistent with doubtful confidence in the justice of the cause.

Appellees presented the point that Forcum took the appeal not in his representative capacity but in an individual capacity, and that Judge Jefferson B. Browne of the 20th Judicial Circuit who made the order sustaining the demurrer to the second amended bill and dismissing it, from which Forcum appealed, had no authority to sit as Judge of the Circuit Court in the Eleventh Circuit. Both points were disposed of against the contention of the appellees by this court speaking through Mr. Justice BROWN, in a very clear opinion in March, 1931. See Forcum v. Symmes, 101 Fla. 1266, 133 South. Rep. 80.

The one error assigned is the order of January 21, 1930, sustaining the demurrers and dismissing the second amended bill.

Was the bill vulnerable to the attack made upon it by the demurrers? All defendants demurred except George H. Close. One called a "special demurrer" on behalf of

W. L. Harris was interposed, which was sustained. It is a misnomer to speak of it as a special demurrer which is unknown in our pleading and practice. All general demurrers which contain specific grounds relating to different allegations of the bill may in a sense be called special as distinguished from those demurrers which attack the equity of the bill generally. So-called special demurrers attack different parts of the bill specifically, but if the bill is good as a pleading and the remaining allegations are sufficient to support the relief prayed, the demurrer will fail.

No ground of the so-called special demurrer is valid if the theory upon which the bill was framed is sound. The principle which pervades the bill is, that no officer or stockholder of an insolvent corporation can avoid his liability for unpaid stock subscriptions by the mere expedient of returning his certificate of stock to the corporation, even if the directors by resolution consent to it.

Section 6540 Compiled General Laws, 1927, provides that, "Every holder of shares of stock not fully paid shall be personally liable to the creditors of the corporation for debts of the corporation to an amount equal to the amount unpaid on the shares held by him." See also Secs. 4089-4093 Revised General Statutes, 1920. Such liability continues even after the dissolution of the corporation in favor of any single creditor against any single shareholder. See Gibbs v. Davis, 27 Fla. 531, 8 South. Rep. 633; Hood v. French, 37 Fla. 117, 19 South. Rep. 165.

After the above decisions Chapter 5892 Acts of 1909 was passed, limiting the liability of the stockholders to an extent equal in amount for so much as may remain unpaid upon their subscription to capital stock.

A full or modified liability of the stockholders of a corporation is most general; it applies both in England and all the jurisdictions of the United States. The theory is that the unpaid subscriptions to the capital stock of a

corporation constitute a trust fund for the benefit of the general creditors of the corporation, and that trust cannot be defeated or the fund impaired by a simulated or pretended payment, nor by any method or device short of an actual payment in good faith. Crawford v. Rohrer, 59 Md. 599; Camden v. Stuart, 144 U. S. 104, 12 Sup. Ct. Rep. 585, 36 L. Ed. 363; Wallace v. Carpenter Electric Heating Mfg. Co., 70 Minn. 321, 73 N. W. Rep. 189, 68 Am. St. Rep. 530.

The above rule being true, where the issuing of shares of stock by a corporation which represents that it has paid up capital stock, of a certain amount, or that its stock will be issued at a certain price, it represents to the business world that it has received money or its equivalent to the amount of the stock issued. When it issues stock for which it receives nothing in exchange, or less than it represents to the public, it commits a wrong. Such conduct enables it to obtain credit to which it is not entitled; it commits a cheat and a fraud. But when the officers and directors of a corporation in failing circumstances, aware of its insolvency and its practical dissolution endeavor to avoid their liability for their unpaid subscriptions, and thus impair the trust fund and destroy the trust to their own advantage by voting a cancellation of their own indebtedness for unpaid subscriptions, the transaction may be good between the corporation and themselves, but from the viewpoint of the corporation's creditors such acts do not merit commendation even upon the ground of self preservation.

It may be technically inexact to say that the properties of a corporation are to be deemed a trust fund for the payment of the debts of a corporation so that the creditors have a lien upon it, or right of priority out of it in preference to any shareholder of the corporation; but it is at least correct in the sense that the directors of a corporation are bound to exercise diligence and good faith in dealing with

the properties of the corporation to the end that the creditors' interests may be protected, especially in case the corporation is insolvent, and as regards creditors there is no distinction between money due for shares of stock in the corporation and any other assets which may form a part of its property and effects. See Beach v. Williamson, 78 Fla. 611, 83 South. Rep. 860; Logan v. Arnold, 82 Fla. 237, 89 South. Rep. 551; Guaranty Trust & Savings Bank v. United States Trust Co., 89 Fla. 324, 103 South. Rep. 620.

The appointment of the receiver of the corporation is not in question. It is assumed that he was rightfully appointed. As receiver it was his duty to protect by all legal means the assets of the corporation in the interests of its creditors first, its stockholders afterwards.

The basis of equity jurisdiction in this case lies in the allegations that many of the defendants were directors of the corporation as well as stockholders. This allegation appears in the original bill and in the amended bill as also in the second amended bill in Exhibit No. 1. Their action in the circumstances alleged in the bill constituted such breach of faith toward the creditors in the maladministration of the corporation's assets as to demand the interposition of a court of equity. All stockholders who became parties to the transaction by direct or indirect acquiescence resulting in benefit to them at the creditor's expense are proper parties, and the receiver of the insolvent corporation is the proper person to bring the action. See Knight & Wall Co. vs. Tampa Sand Lime Brick Co., 55 Fla. 728, 46 South. Rep. 285.

The second amended bill was filed on April 25, 1929. While no order appears of record authorizing it to be filed, yet on May 6, 1929, Joseph Weintraub interposed his demurrer to it and on the same day the other defendants demurred and the demurrers were sustained.

The court recites in its order that the second amended

bill omitted the names of several persons who were made parties defendant originally, but there was no objection to the bill on that ground. All parties who were named treated it as duly filed and the second amended bill alleged that the persons who were omitted were nonresidents or dead and those named had appeared to the original and amended bills and either answered or demurred thereto. There was no change of parties defendant, all being alleged to be either directors or stockholders or both and the suit is not on a joint liability. Whether a bill of this nature may be maintained against stockholders of an insolvent corporation for an accounting of their indebtedness respectively on account of unpaid stock subscriptions is settled by the case of Knight & Wall Co. v. Tampa Sand Lime Brick Co., *supra*.

In addition to such debt being the basis of the court's jurisdiction in this case there is the allegation of fraud and participation in it by all the defendants to defraud the corporation by pretending to have settled their indebtedness by the alleged resolutions of the directors.

The bill was not vulnerable on attack by general demurrer, that is to say, for want of equity. Nor were any of the grounds specially alleged as to the insufficiency of the bill meritorious.

A sufficient cause was presented for an accounting. If any fact exists which may be conceived to be a good defense an opportunity will be given to present it.

The order sustaining the demurrers and dismissing the bill is reversed, with instructions to allow the defendants a reasonable time within which to answer.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BROWN, J., not participating.