LIVESAY INDUSTRIES, INC., and Everett G. Livesay Window Company, Inc., Appellants,

v.

LIVESAY WINDOW COMPANY, Inc., et al., Appellees.

No. 19147.

United States Court of Appeals Fifth Circuit.

Aug. 1, 1962.

J. M. Flowers, Henry M. Sinclair, Miami, Fla., for appellants.

George L. Knight, Walter Humkey, Harold L. Ward, Miami, Fla., for appellees, Fowler, White, Gillen, Humkey & Trenam, Miami, Fla., of counsel.

Before CAMERON and BELL, Circuit Judges and CARSWELL, District Judge.

GRIFFIN B. BELL, Circuit Judge.

This case involves legal fraud. It was accomplished through bold, open and even bald action. Despite sophisticated means it was nonetheless fraud, and in end result—plain and simple fraud. This case is also a classic example of justice long delayed.

The beginning was in 1949 when appellants brought suit for patent infringement. One was the owner and the other the licensee of a patent on a precast monolithic concrete window frame with Venetian blind guides. The District Court entered judgment in 1951 finding infringement of a valid patent but denied damages. The finding of validity and infringement was affirmed by this court, with the cause being remanded for assessment of damages. Livesay Industries, Inc. v. Livesay Window Company, Inc., 5 Cir., 1953, 202 F.2d 378, Cert. Den., 346 U.S. 855, 74 S.Ct. 70, 98 L.Ed. 369.

We affirmed the entry of judgment by the District Court for damages sustained by reason of the infringement prior to October 8, 1951, the day the District

Court entered an injunction against further infringement, in the amount of $731,440 as well as the award of $110,000 as fees for counsel for appellants here. Livesay Window Company, Inc. v. Livesay Industries, Inc., 5 Cir., 1958, 251 F.2d 469, Cert. Den., 346 U.S. 855, 74 S.Ct. 70, 98 L.Ed. 369.

The matter was again before this court in Livesay Industries Inc. v. Livesay Window Company, Inc., 5 Cir., 1958, 256 F.2d 1, Cert. Den., 358 U.S. 882, 79 S.Ct. 121, 3 L.Ed.2d 111. We affirmed the judgment of the District Court refusing to hold Livesay Window Company or the individuals in control of it in contempt for violation of the injunction against infringement.

This proceeding in the nature of a creditor's Bill was filed ancillary to the complaint for infringement and damages. It lies under § 62.37, Florida Statutes, F.S.A., which permits the filing of a suit in equity before the common law judgment is obtained but provides that no final decree shall be entered upon the Bill until the claims have been reduced to judgment.[1] Rule 64, Fed.R.Civ.P., 28 U.S.C.A., provides that remedies available under the law of the state for the purpose of securing satisfaction of a judgment ultimately to be entered are also available in an action in the federal court. Rule 69 provides that proceedings in aid of execution shall be in accordance with the practice and procedure of the state. Appellants premise their case on violations of §§ 608.55 and 726.01, Florida Statutes, F.S.A.[2]

The natural defendants here were the directors of Livesay Window Company, Inc., owning over eighty five per cent of the shares of stock therein. These defendants plus all of the other stockholders with the exception of Rinehart are related by blood or marriage to Carlotta

1. Creditors' bills may be filed in the courts of this state, having chancery jurisdiction, before the claims of indebtedness of the persons filing the same shall have been reduced to judgment, but no such bill shall be entertained by such court, unless the complainants therein shall have first instituted suits in the proper courts at law for the collection of their claims; and no final decree shall be entered upon such creditors' bill until such claims shall have been reduced to judgment.

2. In pertinent part:
608.55 "No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. * * * Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders. * * * Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except in the hands of a purchaser for a valuable consideration without notice. The directors or officers of a corporation who shall violate or be concerned in violating any provision of this

section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation."
726.01 "Every feoffment, gift, grant, alienation, bargain, sale, conveyance, transfer and assignment of lands, tenements, hereditaments, and of goods and chattels, or any of them, or any lease, rent, use, common or other profit, benefit or charge whatever out of lands, tenements, hereditaments or goods and chattels, or any of them, by writing or otherwise, and every bond, note, contract, suit, judgment and execution which shall at any time hereafter be had, made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts, accounts, damages, demands, penalties or forfeitures, shall be from henceforth as against the person or persons, or bodies politic or corporate, his, her or their successors, executors, administrators and assigns, and every one of them so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect, any pretense, color, feigned consideration, expressing of use or any other matter of things to the contrary notwithstanding; * * *."

Lewis, the prime mover and stockholder.[3] Rinehart was the lawyer for the corporation. On March 4, 1953, five days after this court had affirmed the judgment of infringement and ordered the accounting which resulted in the money judgment, the directors met and Rinehart advised them that a substantial judgment would ultimately be entered against the corporation. The settlement of a claim for damages arising out of a personal injury case was also discussed and it was necessary to raise $75,000 for this purpose. The minutes of the meeting make it clear that the directors decided to raise the necessary money to settle the damage claim through the sale of the real property upon which the corporation plant was situated.

The issue as to the status of this property will be disposed of first so as not to confuse it, as was apparently the case in the trial court, with the real issues here. The property, including some of the plant machinery, was sold to Addison Packing Company, a Maine Corporation for $130,000, payable $100,000 in cash with the balance due being represented by two notes due in one and two years from date in the amount of $15,000 each, bearing five per cent interest and secured by a purchase money mortgage on the property. It was simultaneously leased back from Addison. Neither the principal nor interest had

been paid at the time of trial. Appellants contended that the transaction should be treated as a mortgage rather than a sale. The trial court held the transaction to be a bona fide sale, a holding not clearly erroneous under Rule 52(a), Fed.R.Civ.P., and we affirm. The present status of the unpaid notes and mortgage and the ruling of the court with respect to the payment of the principal and interest due will be dealt with under our discussion of remedy. The trial court retained jurisdiction of the cause for the purpose of taxing such costs of Addison as to the court seemed just. We do not know just what the court had in mind by this broad statement but the action against Addison was not without foundation because of the manner, not necessary to be detailed here, in which the transaction was handled and we construe this order to mean that costs are to be limited to ordinary court costs, exclusive of attorney's fees.

On March 27, 1953, the board met and was advised of the settlement of the personal injury claim and the sale and lease back of the land and equipment. Mr. Rinehart then recommended that the company be split into separate corporations for sales, operations, and ownership of equipment in order to limit liability in case of accidents. Mr. Rinehart and the company accountant were directed to formulate such a plan and

3. The owners of the two hundred shares of stock outstanding in Livesay Window Company were:

| NAME | NUMBER SHARES |
|---|---|
| Carlotta Lewis | 98.9 |
| John Lewis | 31.8 |
| Jack Plunkett | 24 |
| Hollis Rinehart | 19 |
| Mrs. F. Plunkett | 12.3 |
| Lewis Plunkett | 5 |
| Ruth P. Hancock | 3 |
| Ruth Frosty Hancock | 1 |
| J. Schultz and/or Carlotta Lewis | 5 |

Livesay Window Company owned all outstanding stock, prior to the purported transfer by way of dividend of the Class "A" stock, in Pre-Cast Corporation and South-West Equipment, Inc.

The sole stockholders in Lewis Manufacturing Company, Inc. were Carlotta Lewis, John Lewis and Jack Plunkett, one share each.

John Lewis was president of Livesay Window Company and Lewis Manufacturing Company, Jack Plunkett was president of Pre-Cast, and Lewis Plunkett was president of South-West.

The directors of the corporations were:

Livesay Window Company—John T. Lewis, Jack Plunkett, Carlotta Lewis and Hollis Rinehart

Pre-Cast Corporation—Jack Plunkett, Hollis Rinehart, Dorothy Schultz

South-West Equipment—Lewis Plunkett, Carlotta Lewis, John T. Lewis

Lewis Manufacturing Co.—John T. Lewis, Carlotta Lewis, Hollis Rinehart and Louis M. Dessaint, (Accountant for the Company)

report back. The only claim outstanding at this time was the potential judgment of appellant.[4] Mr. Rinehart advised the board at a meeting on April 1, 1953 that two corporations had been formed, South-West Equipment, Inc. and Pre-Cast Corporation. South-West would purchase the automotive and other equipment of Livesay Window Company, Inc. for stock in South-West and lease it back to Livesay, while Pre-Cast would purchase the accounts receivable of Livesay for stock in Pre-Cast and also enter into an exclusive sales agreement by which it would handle all sales of products of Livesay Window Company.

On April 9, 1953 the directors met again and defendant John T. Lewis, president of Livesay Window Company, Inc. was authorized to transfer to South-West all of the furniture, fixtures, automotive and other equipment of Livesay Window Company, Inc. and to execute a lease agreement between South-West as lessor and Livesay as lessee of said equipment. He was authorized to transfer all accounts receivable, which aggregated $97,230 to Pre-Cast and to enter into an exclusive sales contract with Pre-Cast on behalf of Livesay Window Company. These transactions were accomplished for a consideration in stock only of the two new corporations. Each had an authorized capital stock or twenty shares of Class "A" stock of a par value of $100 per share and 50,000 shares of Class "B" stock of a par value of $1.00 per share, all of which was transferred to Livesay Window Company, Inc.

South-West received for the stock $5,507.04 in cash, the Addison notes in the amount of $30,000 plus accrued interest, and the machinery, furnishings, automotive and other equipment of Livesay at depreciated book value, together totaling $118,560. The 50,000 shares of $1.00 par value Class "B" stock was given a valuation of $2.3312 per share to balance out with this amount.

Pre-Cast received all accounts receivable having a book value, less bad debt write-off of $97,230, as well as an exclusive sales contract whereby Pre-Cast was to receive four per cent per month of the total sales made, plus $6,000 per annum and free office rent. It was necessary to value the Class "B" stock having a par value of $1.00 at $1.9046 per share to equal the value of the accounts receivable.

This left Livesay Window Company with the stock. It was the lessee of the real property and plant from Addison, and lessee of the equipment with which to manufacture from South-West. The office furnishings and equipment were leased to Pre-Cast by South-West. Nothing was paid for good will, know-how, or the take over of a going organization.

The key to the scheme to defraud appellants was the stock structure of the new corporation. The Class "A" stock was to receive fixed cumulative dividends and had exclusive voting power. The Class "B" stock represented merely the pro rata ownership interest in the assets of the corporation in the event of voluntary or involuntary litigation, with the directors having the discretion to declare dividends on it. It could be redeemed at the option of the board at par in spite of giving it a value of $2.3312 in the South-West transaction and $1.9046 in the Pre-Cast transaction. The Class "B" stock could not participate in the management or control of the corporation, and it was from the beginning watered in value.

The final stroke in this phase came on May 18, 1953 when the directors of Livesay Window Company declared a dividend of all of the Class "A" stock, the voting stock, in South-West and Pre-Cast pro rata to the stockholders of Livesay Window Company. Thereby the only assets of real value owned by Livesay, the judgment debtor, were vested in the stockholders of the judgment debtor.

---

**4.** The company carried liability insurance against accidents. The cost of settlement of the personal injury claim theretofore in question was $175,000 against insurance coverage of $100,000. Higher insurance limits were then obtained.

Livesay Window Company continued to operate until the directors met on November 9, 1953, heard a report that the Supreme Court had denied certiorari on the decision of this court that appellants were entitled to damages, and agreed on the advice of Mr. Rinehart and newly employed counsel to discontinue operations in Livesay so as not to make money for appellants. "It would be foolish to keep that corporation in business to have it earn money that would go to satisfy the money judgment." Mr. Rinehart was directed to seek cancellation of the lease of the plant property from Addison, and the lease and contract with South-West and Pre-Cast, respectively.

All were cancelled. South-West leased the furniture, equipment and motor vehicles which had previously been transferred to it by Livesay Window Company to Lewis Manufacturing Company. Lewis leased the plant and property from Addison at the same rent and entered into an exclusive sales agreement with Pre-Cast. Lewis commenced manufacturing on November 11, 1953 in the same plant, using the same office equipment, machinery, furniture and fixtures. The employees of Livesay became the employees of Lewis. The president was the same. The telephone number was the same.

This left Livesay Window Company with such pre-cast concrete items as were on hand and which had little if any value and the Class "B" stock of the same value. This compares with a net worth of $356,522.36 on February 28, 1953, the day after we held that appellants were entitled to damages. On January 5, 1954, the District Court enjoined all the corporate appellees, except Addison, from declaring dividends and from disbursing any funds other than in the usual course of business.

Lewis Manufacturing Company was amazingly successful. It began business with only $500, derived from the sale of three shares of the authorized capital stock to Carlotta Lewis, John Lewis, and Jack Plunkett. It paid nothing for the business, know-how, goodwill, leases or contracts of Livesay Window Company. It was doing business with Pre-Cast and South-West and on their capital, and became indebted to each in large sums of money. South-West wrote off a debt in the amount of $141,715.23 against Lewis, while Pre-Cast wrote off debts in the sum of $112,438.30.[5] The assets of Pre-Cast and South-West have been depleted at least to this extent illegally and in violation of the injunction not to pay dividends directly or indirectly.

■ Levy was made at the instance of appellant on the assets of Livesay Window Company. They consisted of the Class "B" stock and a number of pre-cast concrete items. An attempt was made to sell the concrete items without success. One of the technical arguments asserted by defendants is that the complaint failed to allege the issuance of execution on the judgment and a return of nulla bona. The fraudulent transfer of legal title by a judgment debtor is involved. Furthermore, appellants had sufficiently exhausted their remedies at law. We reject this contention.[6] George E. Sebring Co. v. O'Rourke, 1931, 101 Fla. 885, 134 So. 556; and Megdall v. Scott Corporation, Fla.1949, 40 So.2d 139; cf. Coleman v. Alcock, 5 Cir., 1959, 272 F.2d 618. As the matter stands nothing has ever been realized on the judgment.

The District Court ordered the lis pendens against the property of Addison cancelled upon payment of the principal and interest due on the notes and mortgage into the registry of the court, there to be held subject to the further order of the court. These notes were trans-

5. Purely as an aside and of no materiality here is the fact that these charge offs caused Pre-Cast and South-West to lose money but they were not reflected on the books of Lewis and thus taxes were avoided by Lewis.

6. Counsel for appellees stated to the trial court that a creditor's Bill will lie where a corporation is formed to accomplish fraud, or where it is used to perpetrate a fraud on creditors.

ferred to and are now held by South-West and the disposition of this sum will be covered by our further decision herein.

■ We hold that these transactions amount to legal fraud. There was no semblance of justification or excuse for them otherwise. Their only purpose was to defraud appellants. The holding of the District Court to the contrary was clearly erroneous. As the Florida Supreme Court said in Stelle v. Dennis, 1932, 104 Fla. 384, 140 So. 194,

"When the legal effect of a conveyance is to defraud creditors, no matter what the actual intention may have been, it is fraud in law."

Livesay Window Company and the natural defendants violated § 608.55, Fla. Statutes Annotated as a matter of law. In addition, the transfer of the assets of Livesay to South-West and Pre-Cast, the dividend of the Class "A" stock, the transfer of the business, contract and leases of Livesay to Lewis, and the charge off of debts of Lewis Manufacturing violated § 726.01, Fla.Statutes Annotated, as a matter of law. They depleted and denuded the judgment debtor to hinder, delay and defraud appellants, who were and are judgment creditors. The record in every respect makes this clear, and also that natural defendants brazenly ignored their fiduciary responsibility which derives from their directorships of an insolvent corporation, and resulting responsibility to creditors. Beach v. Williamson, 1919, 78 Fla. 611, 83 So. 860, 9 A.L.R. 1438; Guaranty Trust & Savings Bank v. United States Trust Co., 1925, 89 Fla. 324, 103 So. 620.

Judgment should have been entered against defendants, with the exception of Addison, both corporate and natural, on the following basis and we reverse and render for that purpose. The District Court is directed to give priority to the further handling of this matter to the end that it may be promptly terminated and to take, in that connection, the following action.

The individual or natural defendants, appellees here, are directed to deliver instanter to the United States Marshal for the purpose of levy and sale as the property of Livesay Window Company, Inc. all shares of Class "A" stock in South-West and Pre-Cast transferred to them by Livesay. Appellants, or either of them, shall be permitted to bid at the sale on this stock and any other assets of Livesay Window Company, Inc. with the amount of the bid, if they are the successful bidders, to be paid by way of a credit on the judgment outstanding against Livesay Window Company, Inc. The officers and directors of Pre-Cast and South-West are to vacate their positions upon the sale of the stock to appellants, or either of them and this will place appellants in position to operate or liquidate Pre-Cast and South-West as they may desire.

Should this Class "A" stock for any reason not be in the hands of the marshal within ten days from date hereof for the purpose of levy and sale, the corporate fiction of South-West and Pre-Cast is to be disregarded, and all assets of both are to be levied on and sold by the marshal subject to the above provision as a credit against the judgment. Bellaire Securities Corporation v. Brown, 1936, 124 Fla. 47, 168 So. 625; Fickling Properties v. Smith, 1936, 123 Fla. 556, 167 So. 42; and Fitz-Patrick v. Commonwealth Oil Company, 5 Cir., 1960, 285 F.2d 726.

Judgments are to be entered forthwith in favor of South-West and Pre-Cast against Lewis Manufacturing Company for the amount of the accounts charged off, heretofore discussed, by South-West and Pre-Cast, $141,715.23 and $112,438.30, respectively, plus any other sums due by Lewis to South-West and Pre-Cast, incurred in the ordinary course of business, by loan, rent, commissions or otherwise to date, with the judgment to be enforced as provided by law.

The order of the District Court regarding the Addison notes and mortgages is vacated with the direction that the sums due thereunder be paid to South-West within ten days from the date hereof or the mortgage is to be foreclosed by the

holder hereof. Upon payment, the lis pendens is to be removed by the holder of the mortgage and notes, or in the alternative, by the District Court. · If foreclosed, appellants shall be allowed to bid with the same provision as to credit on the judgment heretofore discussed.

Should any portion of the judgment remain unsatisfied after the foregoing action has been taken, the District Court is directed to promptly afford a hearing for the purpose of ascertaining and entering judgment against Lewis Manufacturing Company for the fair market value of Livesay Window Company, as a going business, including but not limited to the value of its leases, contracts and good will at the time its business was taken over by Lewis Manufacturing Company on November 11, 1953, and for all other sums, not heretofore included, if any, taken or received directly or indirectly by way of loans or dividends or otherwise to hinder, delay or defraud appellants in the collection of their judgment, and which remain unpaid by Lewis Manufacturing Company. The natural defendants here and any in concert with them are to be included as defendants in said proceeding for the purpose of ascertaining and entering judgment for any sums due by them to Livesay Window Company, Pre-Cast or South-West; or to Lewis Manufacturing Company to the end that it may respond to the judgment against it; whether such sums were taken or received directly or indirectly by way of dividends or loans or otherwise so long as the purpose was to hinder or delay or defraud appellants in the collection of their judgment.

The District Court is further directed to grant such injunctive relief against appellees, except Addison Packing Company, and others in concert with appellees who are made parties, as it deems necessary in the premises to the end of preventing further fraud while this matter is being terminated.

Our intention is to grant complete relief to appellants to the extent of the assets of Livesay Window Company, Inc., South-West, and Pre-Cast, including any that may have wrongfully escaped to any of appellees or others in concert with them, except Addison Packing Company. And the District Court is directed to take such other and further action as may be necessary and feasible to this end, retaining however all supervisory and discretionary powers including those relating to payment of costs.[7]

Having affirmed in part and reversed in part, we remand for further proceedings not inconsistent herewith.

**7.** This case was tried by a visiting judge, now deceased, from another circuit who no doubt had insufficient time to handle a matter of such complexity.