SCHEB, Acting Chief Judge.
In proceedings supplemental to execution, the trial court voided a transfer of goods from Jack Kasper to B & B Holding Company and, in turn, to B & B Drugs of St. Petersburg, Inc., on the ground that the transfer was made to defraud creditors. Appellants argue that the court erred in making this determination without first obtaining jurisdiction over Kasper. We agree and reverse.
Jack Kasper foreclosed a security agreement against the inventory of Acorn Drugs. He sold the inventory to B & B Holding Company, which issued a note and security agreement in return. B & B Holding, in turn, transferred the goods to B & B Drugs.
Subsequently, appellee, McKesson & Robbins Drug Company, obtained a judgment against Acorn Drugs. When it was unable to satisfy the judgment, McKesson initiated proceedings supplementary to execution and sought to examine Acorn under oath. McKesson contended that Acorn had fraudulently transferred assets to B & B Drugs to carry on its business under a new name. Therefore, it also sought an order to prevent B & B Drugs from transferring the drug inventory except in the ordinary course of its business.[1]
Recognizing that their interests might be affected by any subsequent orders, the trial court impleaded the three appellant corporations as well as Kasper. In addition, it issued an order directing each of them to show cause why the transfers of the drug inventory should not be declared fraudulent and voided.
Kasper was never served and did not appear in the proceedings, however. Despite this, the court held that his transfer of the inventory to B & B Holding, as well as its transfer to B & B Drugs, was made to defraud Acorn’s creditors. The court went on to declare that the B & B corporations were the alter egos of Acorn and subjected the drug inventory acquired by B & B Drugs to the claims of McKesson, Acorn’s judgment creditor.
This cause is analogous to Ryan’s Furniture Exchange, Inc. v. McNair, 120 Fla. 109, 162 So. 483 (1935). There, H. C. Richard acquired the personal property of Ryan Brothers, Inc. at a sheriff’s sale and subsequently sold the property to Ryan’s Furni *1309 ture Exchange, Inc. Later, McNair, as receiver of Putnam National Bank, filed an affidavit for proceedings supplementary to execution on a judgment against Ryan Brothers, but did not make Richard a party to the supplementary proceedings. The trial court held that Ryan’s Furniture Exchange was a mere continuation of Ryan Brothers, and that all of the stock of Ryan’s Furniture Exchange was the property of Ryan Brothers. The court set aside the transfers of the property to Ryan’s Furniture Exchange holding that they were made without consideration and with an intent to defraud Ryan Brothers’ creditors. Id., 162 So. at 485. On appeal, the supreme court quashed the order of the trial court because it had denied Richard due process of law by not making him a party to the supplementary proceedings and giving him an opportunity to present his position.
In the case under consideration, Acorn argues that even though the trial court did not make Kasper a party to the supplementary proceedings, it did not violate his due process rights because it did not adjudicate any property interest of his. McNair made the same argument in the companion case to Ryan’s Furniture Exchange, Inc., when he attacked Richard’s petition for writ of certiorari. Richard v. McNair, 121 Fla. 733, 164 So. 836 (1935). McNair contended that Richard, by his sale to Ryan’s Furniture Exchange, had already parted with his claim to all of the property affected by the order in the supplementary proceedings. The supreme court disagreed, noting that although Richard had, in fact, sold the property to Ryan’s Furniture Exchange, it had not paid a substantial portion of the purchase price. The court stated that Richard’s ability to collect the balance depended on the validity of the judgment which the trial court had declared to be void in the supplementary proceedings. Similarly, in the present case, Kasper sold the drug inventory to B & B Holding Company for $50,000 and received a note in exchange.[2]
Thus, the trial court denied Kasper due process of law by invalidating his transfer of the goods to B & B Holding without first affording him an opportunity to present his position. As it now stands, B & B Holding remains liable on its note to Kasper. Although it appears that B & B Holding may have a defense of lack of consideration and illegality against Kasper should he choose to attempt to collect on the note, it might not have these defenses against a holder in due course. § 673.305, Fla.Stat. (1979); 6 Fla.Jur.2d Bills and Notes §§ 468-69 (1978). Consequently, the protection of B & B Holding’s interest also required that the court obtain jurisdiction over Kasper.
Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.
OTT and CAMPBELL, JJ., concur.

. B & B Drugs had essentially the same stockholders, officers and location as Acorn Drugs. Further, Jack Kasper was the father of one of Acorn’s stockholders.

. The record contains a copy of the note but no indication that it has not been paid. Nevertheless, B & B Holding stated that the note has not been satisfied and McKesson has not presented contradictory evidence.