ALLIED INDUSTRIES INTERNATIONAL, INC., formerly known as Worldwide Video; MSR, Inc., and Worldwide Auto Export, Inc., Plaintiff,

v.

AGFA–GEVAERT, INC., a foreign corporation, Defendant,

v.

Michael RUBIN, Diana Rubin, Cargill Boyd, and United Video International, Inc., Third Party Defendants.

No. 86–1804–Civ.

United States District Court,
S.D. Florida.

May 13, 1988.

Jerry Kahn, Miami Beach, Fla., for Allied & Michael Rubin.

Thomas Meeks, Floyd Pearson Richman Greer, Weil Zack & Brumbaugh, Miami, Fla., for Agfa–Gevaert.

David Horr, Miami, Fla., for United Video and Cargill Boyd.

H. Matthew Fuqua, Miami, Fla., for Diana Rubin.

## ORDER ON MOTION FOR SUPPLEMENTARY PROCEEDINGS IN AID OF EXECUTION

ATKINS, District Judge.

THIS CAUSE is before the court on the defendant/third party plaintiff's motion for post judgment relief. After careful consideration of all submitted reports and after a hearing on the matter, it is

ORDERED AND ADJUDGED that the motion is *GRANTED* as follows:

The judgment creditor, AGFA–GEVAERT, INC. ("AGFA"), obtained a judgment against the plaintiff/third party defendant Allied Industries International, Inc. ("Allied") on a counterclaim for an amount including costs and attorneys' fees that totals approximately $177,478.41. AGFA filed this motion for supplementary proceedings in aid of execution after it was unable to collect any portion of the outstanding judgment. In its motion, AGFA sought to implead as third party defendants Michael Rubin, Diana Rubin, Cargill Boyd, and United Video International, Inc. ("United"). This court allowed the named parties to be impled as involuntary counterclaim defendants and they were ordered, as transferees of the judgment debtor Allied, to show cause why they should not be subject to AGFA's judgment.

Under Fed.R.Civ.P. 69, state law concerning supplementary proceedings will govern to the extent that they are not preempted by federal law. In this case, Fla.Stat. § 56.29 will control. By enacting section 56.29, the Florida legislature intended that creditors have "a swift, summary disposition of issues," while "preserv[ing] the equitable character of both proceedings and the remedies available." *Mission Bay Campland, Inc. v. Sumner Financial Corp.*, 72 F.R.D. 464, 466 (M.D.Fla.1976) (citing *Ferguson v. State Exchange Bank*, 264 So.2d 867, 868 (Fla.Dist.Ct.App.1972). Resort to equity is permitted when remedies provided for satisfaction of a judgment prove inadequate. The judgment creditor may then utilize supplemental proceedings to reach property not subject to levy. *Gantz v. First National Bank of Miami*, 138 So.2d 367 (Fla.Dist.Ct.App.1962). The

judgment creditor AGFA exhausted its legal remedies and now turns to this court seeking equitable relief through supplementary proceedings in aid of execution.

■ In *Wieczoreck v. H & H Builders, Inc.*, 450 So.2d 867 (Fla.Dist.Ct.App.1984), the court outlined the procedure by which third party defendants may be impleaded. Under decisional law interpreting section 56.29, the two jurisdictional prerequisites for supplementary proceedings are (1) an unsatisfied writ of execution, and (2) an affidavit averring that the writ is valid and unsatisfied along with a list of persons to be impleaded. Once these jurisdictional requirements are met, the statute must be given a liberal construction to afford a judgment creditor the most complete relief possible. *Wieczoreck*, 450 So.2d at 871 (citing *Richard v. McNair*, 121 Fla. 733, 164 So. 836 (1935)). AFGA properly met the stated requirements and established a prima facie case, see *Wieczoreck*, 450 So.2d at 872, and therefore this court has the authority and in fact a duty to implead third parties. *See Mission Bay Campland*, 71 F.R.D. 432; *Richard v. McNair*, 121 Fla. 733, 164 So. 836. As noted by the court in *Wieczoreck*, such impleading does not in itself establish liability on the part of the impleaded third parties. *Wieczoreck*, 450 So.2d at 871. Rather it gives them an opportunity to raise their defenses and protect their interests consistent with the requirements of due process.

In its motion for supplementary proceedings and again in its memorandum of law in support of post judgment relief, AGFA asserts that United is the alter ego of the allegedly defunct Allied and is therefore liable for the full amount of the judgment entered against Allied. AGFA argues that, should United not be found to be Allied's alter ego, alternatively, United, as the recipient of assets belonging to Allied for no consideration, should be liable for the judgment. AGFA also contends that Cargill Boyd, as sole shareholder and president of United, is individually liable to AGFA for the full amount of the judgment. As the sole shareholder of United, he received the full value of all of Allied's assets received

by United. Because United was created to continue the operations of Allied without paying AGFA's judgment, the corporate form may not be used to protect him from individual liability. AGFA also asserts that both Michael and Diana Rubin should be individually liable to the extent of the value of assets that they received from Allied within one year of AGFA's judgment in what amounted to preferential transfers. Michael Rubin transferred approximately $140,000.00 worth of property to himself by repossessing property in preference of other creditors therefore breaching his fiduciary duty as director, president, and sole shareholder to Allied's creditors. AGFA, alternatively, seeks the value of the property from Diana Rubin who now claims ownership of the repossessed property.

In July of 1986, Allied sued AGFA for breach of contract in the circuit court of Florida. After removing the action to this court, AGFA counterclaimed for goods sold and delivered. A verdict was rendered in favor of AGFA on Allied's breach of contract claim and on AGFA's own counterclaim. The court awarded AGFA $128,-684.12 plus post judgment interest at the rate of 6.09%. In addition, AGFA was given costs of $9,482.13, attorneys' fees of $11,431.25, and prejudgment interest of $20,011.26. AGFA has recovered none of this judgment to date. Michael Rubin testified that Allied is, in effect, insolvent and unable to pay its debts.

Michael Rubin was the sole shareholder, president, and director of Allied. After the verdict was returned, he declared his intention of preventing AGFA from collecting any of its judgment. The verdict was returned on March 31, 1987; Allied, according to Rubin, ceased operations on April 1, 1987. Cargill Boyd, president of United, testified that United began to "wind tape" on April 2, 1987. On the day the verdict was returned, Michael Rubin directed Allied's employees to tell its customers that Allied was no longer in business. The callers were given United's telephone number which rang at the same desk and was answered by the same receptionist as phone calls placed to Allied.

United began its business and continues using the same winding machines used by Allied, the same computer equipment that Allied used and it occupies Allied's former office space. The office space was rented furnished and so United also uses furniture, telephones, and for several months, all of the typewriters formerly used by Allied. Most of Allied's former employees now work for United at the same or similar jobs at exactly the same weekly salary. Prior to their "dismissal" from Allied, the employees were informed that they would be "hired" by United. The only indication of a change in employment was the name appearing at the top of the paycheck. The employees who remained with United worked without interruption between "jobs."

Although Cargill Boyd holds all of the outstanding stock of United, he was not responsible for any of the start up capital for the corporation. In fact, the evidence does not show a financial investment of any sort by Mr. Boyd. United was financed through loans on which Michael Rubin was the primary obligor despite the fact that he allegedly dismantled Allied because he was unable to compete in the business. Michael Rubin also claimed that Allied's business was negligible and that it was financially pressed, yet, to secure loans for United, Rubin gave the lending institution financial data that showed Allied holding substantial assets. Information given to Eagle National Bank showed Allied's sales for the first quarter of 1987 totaling $403,438.01 with a gross profit of $201,718.74, and a net profit of $126,983.64. In a sworn statement for Eagle National, Mr. Rubin valued his stock in Allied at $500,000.00 three weeks after the judgment despite having stated that Allied lacked appreciable assets.

United subleases its office space from a corporation named DER Duplicating ("DER"). DER was incorporated by Michael Rubin after the verdict against Allied was rendered. Its office is located at the same site as United, uses the same receptionist and the same telephone. In fact, nothing distinguishes the companies' visually from one another. Although DER occupies the majority of the floor space, it pays only a nominal rent. United bears the larger portion of the total $1,820.00 per month, paying $1,500.00. Testimony indicated that Michael Rubin, not Cargill Boyd, has "the final say" at United. Although Boyd is president and sole shareholder, Diana Rubin's salary exceeds his by $300.00 per week. She also receives $2,500.00 per week in a "commission" under a purchase order agreement with Video Loaders, Inc., United's largest customer and a former Allied customer. Michael Rubin helped Video Loaders to establish letters of credits, the method of payment on the purchase order. Mrs. Rubin's "commission" approximates Michael Rubin's salary at Allied and is deposited in an account held jointly by Michael and Diana Rubin.

Mr. Boyd demonstrated no special expertise or even particular experience in the tape business; he testified that his employment at Allied was comprised of performing "special projects" to which Mr. Rubin was too busy to give his full attention. Mr. Boyd entered a market without having any idea of the volume of Allied's sales. A business that he was unable to provide with start up capital or for that matter finance on his own credit was enormously successful from the start.

■ Under Fla.Stat. § 56.29(5), a court may fashion an appropriate equitable remedy to afford a judgment creditor as complete relief as possible including finding a new corporation liable for a judgment against its predecessor corporation when the new corporation is merely the alter ego of the judgment debtor. *See e.g.*, *Livesay Industries, Inc. v. Livesay Window Company*, 305 F.2d 934 (5th Cir.1962); *Ryan's Furniture Exchange, Inc. v. McNair*, 120 Fla. 109, 162 So. 483 (1935); *Florida Brogdex Distributors, Inc. v. Hulsey*, 103 Fla. 723, 138 So. 728 (1931); *B & B Drugs St. Petersburg, Inc. v. McKesson & Robbins Drug Co.*, 380 So.2d 1307 (Fla.Dist.Ct.App. 1980). United was incorporated upon Allied's "demise." United took over Allied's leases and received all of Allied's assets without any consideration. It employs the same people, services the same customers,

and is engaged in the same business using the same equipment. The only difference is that Cargill Boyd, Diana Rubin's former husband and father of her children, now holds all of United's outstanding stock and the title as president of the corporation. All of the facts surrounding the transition between Allied and United lead to the inevitable conclusion that the only changes involved the name of the company. Although Cargill Boyd holds the stock of the company, the evidence demonstrates that Diana and Michael Rubin receive the same financial benefit and retain the same ultimate authority at United, despite their apparent lack of ownership. The only logical conclusion finds United to be a continuation of Allied and therefore as responsible for its liabilities as it has been the recipient of its benefits.

Section 56.29(6)(a) requires that a judgment creditor may reach any property to which the judgment debtor transferred title within one year of service of process on him if the transferee is a "person on confidential terms with the defendant." The judgment debtor will have the burden of establishing that the transfer was not made to defraud a creditor or hinder or delay payment. *See* Fla.Stat. § 56.29(6)(a). To establish fraud requires " 'only a preponderance or greater weight of the evidence.' " *Wieczoreck,* 475 So.2d 227, 228 (quoting *Rigot v. Bucci,* 245 So.2d 51, 53 (Fla.1971)). It is evident to this court that United was established to defraud AGFA of its judgment. United was established on the name, credit, and efforts of Allied, Michael Rubin, and Diana Rubin. The third party defendants have failed to rebut the prima facie case established by the judgment creditor and therefore United must be held liable for the judgment debt of its predecessor Allied.

■ AGFA also seeks to hold Cargill Boyd liable for its judgment as the recipient of all of United's outstanding stock. The Florida Supreme Court declared shares of a successor corporation that was established to defraud a creditor subject to execution by the creditor. *See e.g., Florida Brogdex Distributors, Inc. v. Hulsey,* 103 Fla. 723, 138 So. 728, 729. The Fifth Circuit, interpreting Florida law, required defendants to deliver for the purpose of levy and sale all shares of class "A" stock in the successor corporation. *Livesay Industries, Inc. v. Livesay Window Co.,* 305 F.2d at 940. In this case, all of Allied's assets including good will, business, leases, and employees, as well as the tangible assets were transferred to United without consideration. As sole shareholder, Cargill Boyd is the equitable owner of United's assets although he contributed no personal funds to the corporation. Because the stock of a successor corporation is subject to execution, *see, e.g., Livesay Industries, Inc.. v. Livesay Window Co.,* 305 F.2d 934; *Ryan's Furniture Exchange v. McNair,* 120 Fla. 109, 162 So. 483, and this court has determined that United is a mere continuation of the business and affairs of Allied, United's stock is subject to execution to satisfy AGFA's judgment and Cargill Boyd is liable to AGFA to the extent of his interest in the stock of United.

AGFA asserts that Michael Rubin should be found individually liable to the extent of assets which he personally repossessed from Allied in derogation of creditors' rights and in contravention of his fiduciary duty to the corporation as its president, director, and sole shareholder. Michael Rubin testified that he repossessed property valued at $140,000.00 from Allied within one year of the judgment against it. Rubin sold the assets to Allied which purchased them with two notes for $60,000.00 and $80,000.00. The equipment sold for the $60,000.00 note included typewriters, telephone equipment, an AVE winder, two other winders, a dropout tester, a Packall Shrink machine, a color monitor, degausser, automatic sleeve folder, pallet jack, hot stamp machine, air compressor, and desks. The $80,000.00 note purchased a "clean room." While the present action was pending, Michael Rubin sent a demand notice to himself as president of Allied. As president, he refused payment on the notes. Rubin then repossessed the equipment. The equipment remained in Allied's possession and for its use until the end of March, 1987, when the verdict against Allied was

returned. It appears that United now has possession and use of the property.

█ As president, director, and sole shareholder [1] of Allied, Michael Rubin owed a fiduciary duty to the corporation and its creditors. Under corporate law, a fiduciary is an officer, director, majority shareholder, agent, or minority shareholder who exerts actual control over the corporation. *See In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir.1986) (citing 12B Fletcher, Cyclopedia Corporations § 5811 at 156–57 (1984)). Therefore Michael Rubin was in the position of fiduciary to Allied and its creditors and bears the burden of proving the fairness of his actions while in control. *In re N & D Properties, Inc.*, 799 F.2d at 732. Michael Rubin has not contradicted the evidence that shows he acted with complete disregard of Allied's creditors, acting entirely for his own benefit. As the court in *N & D Properties* recognized, such attention to personal gain at the expense of the corporation is a breach of fiduciary duty that justifies equitably subordinating such a claim. *Id.* at 732 (citing *In re American Lumber Co.*, 7 B.R. 519 (Bankr. D.Minn.1979); *In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir.1983)). This court has the power to fashion equitable relief to afford the creditor complete relief and subordination is an equitable power governed by equitable principles. *See In re Westgate– California Corp.*, 642 F.2d 1174, 1177 (9th Cir.1981). In this case Michael Rubin testified that he repossessed the equipment when he realized that Allied was not doing well. By repossessing virtually all of Allied's assets, Rubin acted in his own interest and to the detriment of the judgment creditor whose action was pending at that time. Therefore Michael Rubin's claim to the equipment should be subordinated to that of the judgment creditor AGFA who was unable to recover any of its judgment from a corporation that had been stripped of most of its assets and he is personally liable to AGFA in that amount representing the value of the assets he received in

preference to Allied's creditors, an amount equal to the notes totaling $140,000.00.

Michael Rubin's eleventh hour defense that he never owned the assets that he repossessed is contrary to the facts before this court. Rubin asserts that the equipment repossessed was obtained from Allied Blinds, Inc. ("Allied Blinds"), a company owned by Diana Rubin. Mr. Rubin testified at trial that he was the owner of Allied Blinds. He claimed to have been "the only stockholder, the president and the agent for that company." In his Trial Memorandum: "Oral Assignment of Choses in Action" dated March 5, 1987, Mr. Rubin's attorney declared on Mr. Rubin's behalf that:

(1) Plaintiff [Allied] is a successor corporation of MSR, Inc., Worldwide Video, and Allied Blinds, Inc.

(2) Plaintiff, as well as its predecessor corporations were established and wholly owned by Michael Rubin, current president of Plaintiff and its successors.

(3) *Michael Rubin owned and controlled* MSR, Inc., Worldwide Video, and *Allied Blinds, Inc. and all assets therein,* including the choses in action sued upon against defendant in this cause.

(emphasis added): Mr. Rubin's contradiction of his earlier assertions are a further attempt to obfuscate the already murky atmosphere surrounding these proceedings and will not be countenanced.

█ Finally, Diana Rubin is liable to AGFA in the amount of $30,000.00 that she received in "sales commissions" from United. Section 56.29(6)(a) places the burden on a transferee who is "on confidential terms with the defendant" to establish that a transfer of the defendant's property was not made to delay, hinder, or defraud creditors. Diana Rubin's "commission" is in addition to a salary that she collects from United that equals that which she received from Allied. This salary, as previously noted, exceeds that of the president and sole shareholder of the corporation. The "commission" is allegedly based upon a pur-

---

1. Michael Rubin testified that he is the sole shareholder though evidence also suggested that Diana Rubin was a minority shareholder.

chase order between United and its customer Video Loaders. Michael Rubin was responsible for establishing the letters of credit through which Video Loader pays United. The monthly commission approximates what Mr. Rubin received in compensation from Allied and is deposited in an account that he holds jointly with his wife. Diana Rubin has not responded to the allegation that this transfer is one of property belonging to United and was made with the purpose of delaying, hindering, or defrauding the judgment creditor and thus has not rebutted AGFA's prima facie case. It is therefore the conclusion that this transfer falls within those proscribed by section 56.-29(6)(a) and the transferee is liable in that amount.

Accordingly, it is

ORDERED AND ADJUDGED that the third party defendant United is liable to the judgment creditor AGFA in the full amount of the judgment entered against Allied Industries International, Inc. plus costs and reasonable attorney's fees pursuant to Fla. Stat. § 56.29(11). It is further

ORDERED AND ADJUDGED that the third party defendant Cargill Boyd is liable to the judgment creditor AGFA in the amount represented by the outstanding stock of the corporate third party defendant United plus costs and reasonable attorney's fees. It is further

ORDERED AND ADJUDGED that Michael Rubin is liable to the judgment creditor in the amount of $140,000.00 representing the value of property belonging to the judgment debtor that he transferred to himself prior to entry of judgment against Allied plus costs and reasonable attorney's fees. It is further

ORDERED AND ADJUDGED that Diana Rubin is liable to the judgment creditor AGFA in the amount of $30,000.00 that represents property of United, the successor of Allied plus costs and reasonable attorney's fees.

The defendant/third party plaintiff AGFA is directed to file an affidavit specifying with particularity the work, time spent, and amount claimed for attorney's fees within ten days. Such affidavit will be accompanied by an affidavit of an attorney in support. The third party defendants shall have ten days within which to file any objections to the affidavit of fees.